**Zoraida ZAMBARDINO, Appellee,**

**v.**

**Richard SCHWEIKER, Secretary of the Department of Health and Human Services, and Francis J. McDonough, Social Security District Manager, Jersey City, New Jersey, Appellants.**

**No. 81–1799.**

United States Court of Appeals, Third Circuit.

Argued Nov. 9, 1981.

Decided Dec. 28, 1981.

---

Juan del Real, Acting Gen. Counsel, Barbara Spivak, Regional Atty. (argued), Tamar K. Klein, Barbara Strauss, Asst. Regional Attys., Dept. of Health and Human Services, New York City, Mary C. Cuff, Asst. U. S. Atty., Civ. Div., Newark, N. J., for appellants.

Theodore A. Gardner (argued), Hudson County Legal Services, Jersey City, N. J., for appellee.

Before SEITZ, Chief Judge, GARTH, Circuit Judge, and POLLAK,* District Judge.

## OPINION OF ·THE COURT

SEITZ, Chief Judge.

The Secretary of Health and Human Services appeals from a final order of the district court granting Zoraida Zambardino's motion for class certification and granting Zambardino's motion for summary judgment in a modified form. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

On February 29, 1980, the Social Security Administration (SSA) determined that Zoraida Zambardino had become eligible for disability benefits under the Supplemental Security Income (SSI) program, 42 U.S.C. §§ 1381–1383 (1976) as of September, 1979. Two months later, the SSA district office in

Jersey City, New Jersey, notified Zambardino that she was entitled to an initial lump sum payment of $1,170.00 for the period from September 1979, the date of her disability, to May 1980, when she received her first monthly SSI check of $130.

During this period of retroactive entitlement, Zambardino had been receiving $81.00 per month under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. §§ 601–644 (1976). Pursuant to a regulation promulgated by the Secretary, 20 C.F.R. 416.1151(a)(2) (1979), the Jersey City SSA office, in calculating Zambardino's lump sum SSI payment, deducted the AFDC benefits she had received between September 1979 and May 1980 from her retroactive entitlement. The regulation excludes assistance payments from an SSI recipient's income in computing benefit levels if such payments are "funded wholly by a state or by a political subdivision of a state." 20 C.F.R. 416.1151(a)(2) (1979) (current version codified at 20 C.F.R. § 416.-1124(c)(2) (1981)). Because the federal government provides fifty percent of the funding for New Jersey's AFDC program, the SSA counted all of Zambardino's interim AFDC benefits as income to reduce her retroactive SSI payment dollar-for-dollar.

Zambardino requested reconsideration of the retroactive payment, arguing that the regulation impermissibly narrows 42 U.S.C. § 1382a(b)(6) (1976), which excludes from income assistance "based on need and furnished by any state." The request was denied. After an administrative law judge upheld the Secretary's determination, it was affirmed by the Appeals Council. This action followed.

Zambardino alleged that 20 C.F.R. 416.-1151(a)(2) directly conflicts with 42 U.S.C. § 1382a(b)(6), and sought a declaratory judgment that the regulation was invalid.[1]

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Zambardino also challenged section 12340.-1(a) of the Department's Claims Manual, which provides in relevant part:

When an AFDC recipient (including one in foster care) applies for SSI payments, the AFDC payments made for the claimant during the months for which the individual is later determined to be eligible for SSI are

On behalf of herself and a class of similarly situated New Jersey SSI recipients, she sought an order directing the Secretary to pay the amount withheld from lump sum SSI payments by reason of 20 C.F.R. § 416.1151(a)(2). Both parties moved for summary judgment.

The district court held that the Secretary's regulation impermissibly conflicts with section 1382a(b)(6) of the statute. The court granted Zambardino's motion for summary judgment in part, however, holding that that statute permits the Secretary to offset the federal contribution to AFDC recipients but not the state's portion as well. The court concluded that Zambardino was entitled to receive only the state portion of AFDC benefits that the Secretary had deducted pursuant to the regulation. The court also granted Zambardino's motion for class certification against the Secretary's objection that the unnamed class members had failed to exhaust their administrative remedies.

## II.

The SSI program is designed to meet basic subsistence needs of aged, blind, or disabled individuals. The benefit level of eligible recipients is reduced by any income that is not excluded under 42 U.S.C. § 1382a(b) (1976). Before 1976, section 1382a(b)(6) excluded from income "assistance described in section 1382e(a) of this title which is based on need and furnished by any State or political subdivision of a State." Section 1382e(a) described "Optional State Supplementation" programs that were cash payments made on a regular basis as part of an approved plan of state supplementation of SSI. In 1976, Congress amended section 1382a(b)(6) to provide:

(b) In determining the income of an individual (and his eligible spouse) there shall be excluded—

. . . .

(6) assistance, furnished to or on behalf of such individual (and spouse), which is based on need and furnished by any State or political subdivision of a State.

The Secretary promulgated a regulation to define the scope of section 1382a(b)(6):

Assistance based on need furnished to or on behalf of an eligible individual . . . shall not be considered in determining countable income under Title XVI provided: . . .

(2) The assistance payment is funded wholly by a state or a political subdivision of a state . . . When Federal or non-public moneys are provided for the assistance payment, e.g., when there is a specific Federal/State program of project or formula grants (such as grants-in-aid under Title IV–A of the Act) [AFDC], the assistance payment is not funded wholly by a state or political subdivision.

20 C.F.R. § 416.1151 (1979)

After an AFDC recipient begins receiving SSI benefits, states must terminate AFDC payments to maintain a qualified program eligible for federal funds. 42 U.S.C. § 602(a)(24) (1976). In addition, states may recoup from the SSI recipients the state-funded portion of any interim AFDC benefits, but are not required to do so. If a state chooses to seek reimbursement, the SSA treats the state contribution to interim AFDC payments as a loan and thus excludes such payments from the lump sum benefit calculation. *See Moore v. Colautti*, 483 F.Supp. 357, 363 (E.D.Pa.1979), *aff'd* 633 F.2d 210 (3d Cir. 1980). The dispute in this case arises because New Jersey has elected not to recoup its portion of AFDC payments. N. J. Administrative Code 10:82–3.7(a)(4)(ii) (1980).

■ Although neither the pre-amended version of section 1382a(b)(6) nor the regulation promulgated thereunder, 416 C.F.R. 1151 (1976), explicitly sanctioned the deduction of AFDC benefits from lump sum SSI checks, it is undisputed that the Secretary engaged in this practice under prior law. *See Jones v. Califano*, 576 F.2d 12, 14–16 (2d Cir. 1978) (indicating that the Secretary deducted AFDC payments from lump sum

unearned income to the individual and reduce the SSI payment dollar for dollar; i.e. the SSI

payment is reduced only until the discontinuance of the AFDC payment.

SSI checks prior to 1976 statutory amendments.). Zambardino does not argue, and we are not prepared to assume, that the Secretary's practice before 1976 conflicted with the pre-amended version of section 1382a(b)(6).[2]

Zambardino argues that Congress amended section 1382a(b)(6) to permit states to forego recoupment without causing a reduction in SSI benefits and that the district court correctly held that the Secretary's regulation impermissibly narrows the statute by adding the requirement that assistance be entirely state funded in order to be excluded. The Secretary contends that Congress did not intend its amendment of the statute to alter the wholly state funded requirement implicit in the pre-amended version of section 1382a(b)(6). Instead, he argues that the amendment was intended to encourage states to provide assistance to certain individuals in public institutions. Thus, in his view, it merely broadened the types of wholly state funded assistance that states could provide without causing reductions in recipients' SSI benefits.

### A.

■ As the agency charged with administering the SSI program, the Department's interpretation of the statute is entitled to deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Only if, after an examination of the statutory language, the legislative history, and the overall statutory scheme, it appears that a regulation is "inconsistent with the statutory mandate . . . or frustrate[s] the policy that Congress sought to implement"

will we reject administrative constructions of a statute. *Federal Election Commission v. Democratic Senatorial Committee*, —— U.S. ——, ——, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). *See Rochester v. Baganz*, 479 F.2d 603, 606 (3d Cir. 1973) ("Regulations issued pursuant to the broad rule-making authority granted to the Secretary [of the Department of Health and Human Services] by 42 U.S.C. § 1302 must be sustained if reasonably related to the purposes of the Act.").

Section 1382a(b)(6) itself does not contain a requirement that excludable assistance must be wholly state funded. The absence of such a requirement lends some credence to the district court's view that Congress intended to exclude any assistance that is funded by a state. Even if we accept the district court's conclusion that the statute plainly requires exclusion, however, we are not foreclosed from examining its legislative history to divine congressional intent. *E.g., Train v. Colorado Public Interest Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976).

■ Congress' primary purpose in amending section 1382a(b)(6) was to facilitate its desire to permit states to subsidize residents of public institutions serving less than 16 residents without causing a reduction in SSI benefits. The amendment was contained in section 505(b) of P.L. 94–566, 90 Stat. 2667, 2686 (1976), which was entitled, "Eligibility of Individuals in Certain Institutions." Section 505(a) provides:

(a) *In General.*—Section 1611(e)(1) of the Social Security Act [42 U.S.C.

**2.** In a House Report accompanying P.L. 233, 87 Stat. 947 (1973) which provided for an increase in Social Security and SSI benefits, the Ways and Means Committee observed:

The Congress, in developing the supplemental security income program, established a uniform benefit structure which was regarded as the Federal responsibility. It recognized that States might wish to add to the amount of the federal benefit. . . . However, its clear and unequivocal intention was that such payments would be a State responsibility and wholly State financed.

H.Rep.No.627, 93d Cong., 1st Sess. 9 (1973) *reprinted in* [1973] U.S.Code Cong. & Ad.News 3177, 3184.

Although expressions of congressional intent made by subsequent Congresses are not accorded substantial weight, *see United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (remarks of senators in 1943 not authoritative statement of congressional intent in 1932, when Congress enacted legislation), we believe that this House Report, accompanying a bill enacted 16 months after the passage of the first SSI legislation, and before the latter's effective date, is entitled to some probative value.

§ 1382(3)(1) (1976)] is amended ... by adding at the end thereof the following new subparagraph:

(C) As used in subparagraph (A), the term "public institution" does not include a publicly operated community residence which serves no more than 16 residents.

Section 505(b), which amended section 1382a(b)(6), was labelled a "Conforming Amendment."

The Senate Finance Committee's report contains the following comment on section 505:

### Eligibility of Individuals in Certain Institutions

### (Sec. 505 of the Bill)

Present law provides that individuals who are in nonmedical public institutions are not eligible for SSI benefits.... The bill would amend present law to provide that the prohibition against SSI payments to persons in public institutions would not be applicable in the case of publicly operated community residences which serve no more than 16 residents. In addition, the bill provides that Federal SSI payments would not be reduced in the case of assistance based on need which is provided by States and localities. This would allow States and localities to supplement the Federal SSI benefits through either direct or indirect assistance to persons in public institutions. It would also allow States and localities to provide emergency and other special need assistance without causing a reduction in their federal SSI payments.

S.Rep.No.1265, 94th Cong., 2d Sess. 29, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5997, 6023 [hereinafter S.Rep.No. 1265].

Similarly, the House Conference Report accompanying P.L. No. 94–566 explains that section 505 would "exclude publicly operated community residences which serve no more than 16 residents from being deemed public institutions in which individuals are ineligible for SSI benefits." H.Conf.Rep. 1745, 94th Cong., 2d Sess. 27, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5997, 6048.

We acknowledge that some language in the Senate Report would support a more expansive view of Congress's purpose in amending section 1382a(b)(6), *e.g.*, S.Rep. No.1265, 29, *reprinted in* [1976] U.S.Code Cong. & Ad.News at 6023 ("[The bill] would also allow States and localities to provide emergency and special need assistance to SSI recipients without causing a reduction in their Federal SSI payments."). Nonetheless, in light of the purpose of the amendment, we do not believe that this language compels the conclusion that Congress intended to alter the existing policy regarding income exclusion. Indeed, it seems unlikely that this passage would encompass the AFDC program, because AFDC cannot fairly be characterized as a program of "emergency and special needs assistance." *See* 42 U.S.C. § 601 (1976) (Authorizing AFDC appropriations to "encourag[e] the care of dependent children in their own houses ... to help maintain and strengthen family life and to help ... parents and relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing child care and protection.").

Although it is true that, as a general proposition, we must presume that Congress intended the plain language of the statute, where the legislative history casts doubt on Congress's intent, "we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process." *Cass v. United States*, 417 U.S. 72, 83, 94 S.Ct. 2167, 2173, 40 L.Ed.2d 668 (1974), quoting *Schmid v. United States*, 436 F.2d 987, 992 (Ct.Cl.1971). Such recognition seems appropriate in this case. Congress clearly intended to change existing law regarding certain types of state assistance to individuals in small public institutions. It is equally clear that Congress amended section 1382a(b)(6) to accommodate this objective. Significantly, there is little evidence in the legislative history that Congress sought to alter the wholly state funded requirement. In light of the limited pur-

pose of the amendment, we believe that the Secretary reasonably construed the statute.

### B.

The Secretary's interpretation of section 1382a(b)(6) also finds support in other provisions that shed light on the interplay contemplated by Congress between the AFDC and SSI programs. In 1972, Congress amended the AFDC statute to provide that a recipient of SSI may not simultaneously receive benefits under the AFDC program. To receive federal funding, state AFDC plans must "provide that if an individual is receiving benefits under [SSI] then, for the period for which such benefits are received, such an individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under [AFDC]." 42 U.S.C. § 602(a)(24) (1976). In the House Report accompanying the amendment, the Ways and Means Committee stated that the provision would continue "the usual rule against payment of benefits under more than one public assistance plan by excluding from benefits under the family programs any individual who elects to receive aid under Title XX, Assistance for the Aged, Blind and Disabled." H.Rep. 231, 92d Cong., 2d Sess. 185, *reprinted in* [1972] U.S.Code Cong. & Ad.News, 4989, 5171.

As the district court correctly observed, section 602(a)(24) is not directly applicable here. It requires only that states terminate AFDC benefits to individuals who are simultaneously receiving SSI payments and contemplates that any duplication be remedied by terminating AFDC payments. We believe, however, that the Secretary could have reasonably inferred from section 602(a)(24) a general congressional intent to preclude simultaneous recovery under both the AFDC and SSI programs. The interpretation of section 1382a(b)(6) urged by Zambardino would indirectly conflict with such a reading of section 602(a)(24), and the Secretary permissibly construed the section so as to avoid conflict. *See Citizens to Save Spence County v. Environmental Protection Agency,* 600 F.2d 844, 871 (D.C.Cir.1979).

Moreover, a holding that Congress intended the 1976 amendment to enable states to supplement SSI benefits with unrecouped interim AFDC payments would appear to apply with equal force to simultaneous receipt of AFDC benefits by recipients of SSI. This would directly conflict with Congress' requirement in section 602(a)(24) that states terminate AFDC benefits to SSI recipients. Since Zambardino became, in effect, an SSI recipient in September 1979, the onset of her disability, the Secretary's regulation avoids a statutory conflict in the only way possible: by requiring the deduction of previous AFDC payments from her retroactive SSI payment. Thus, although Congress did not authorize the Secretary to deduct AFDC payments from retroactive SSI benefits, we cannot say that the Secretary exceeded his broad grant of rulemaking authority, *see* 42 U.S.C. § 1302 (1976), to effectuate congressional intent.

We believe it is also significant that prior to the 1976 amendment of section 1382a(b)(6), the Secretary had promulgated a regulation giving an identical interpretation to state assistance in another context. In an effort to encourage states to provide interim assistance to SSI beneficiaries, Congress enacted 42 U.S.C. § 1383(g) (1976). The section permits the Secretary to withhold from SSI recipients the amount of interim assistance provided by states and to reimburse the states for such assistance. "Assistance" is defined in 42 U.S.C. § 1383(g) as "[a]ssistance financed from State and local funds." In May, 1976, the Secretary promulgated a regulation interpreting the interim assistance statute, which explicitly excludes "[a]ssistance payments financed in whole or part from Federal funds (e.g. to families with dependent children)" from the coverage of the statute. 20 C.F.R. § 416.1911(b)(3) (1977).

We are aware that the Secretary's interpretation of section 1382a(b)(6) effectively nullifies the decision of New Jersey to forego reimbursement of its portion of interim AFDC benefits to provide additional assist-

ance to its residents. There is no question however, that Congress has great latitude in defining income for the purpose of calculating benefits under entitlement programs. We believe that the Secretary's interpretation of the scope of the exclusions in section 1382a(b)(6) is supported by the structure and the legislative history of the 1976 amendments, as well as the overall social welfare scheme. Therefore, we cannot say that it is impermissible.

### III.

In light of our conclusion that the Secretary reasonably construed section 1382a(b)(6), we need not reach the issue of class certification.

### IV.

The order of the district court will be reversed and the district court will be directed to grant the Secretary's motion for summary judgment.