**UNITED STATES of America, Plaintiff,**

v.

**Sinclair PRESTON and Ben Johnson, Defendants.**

**Crim. No. 87–00085.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 31, 1990.

---

Thomas J. Bondurant, Jr., Asst. U.S. Atty., Roanoke, Va., for plaintiff.

C. Randall Lowe, Abingdon, Va. and Donald E. Earls, Norton, Va., for Preston.

Emmitt F. Yeary, Abingdon, Va., for Johnson.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on a motion by the defendants to have the court reduce their sentences pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 18, 1987, the defendants were convicted of conspiring to distribute cocaine and aiding and abetting the distribution of cocaine. Those offenses were committed in the Spring of 1987. On January 28, 1988, the defendants were sentenced to ten years in prison, with no eligibility for parole, and five years of supervised release. The convictions were appealed to the Court of Appeals for the Fourth Circuit which affirmed them. The resulting mandate from the Court of Appeals was received by this court and filed on March 16, 1989. Mr. Johnson and Mr. Preston filed their Rule 35 motions on June 2, 1989 and June 14, 1989, respectively.

## ANALYSIS

### I.

### *Jurisdiction of the Court*

Rule 35 of the Federal Rules of Criminal Procedure provides that "[a] motion to reduce a sentence may be made ... within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment.... The court shall determine the motion within a reasonable time." Both the defendants' motions to reduce their sentences were made within 120 days of the receipt of the mandate issued by the Fourth Circuit Court of Appeals upon its affirmance of the convictions of the defendants. Therefore, the court has jurisdiction to hear and rule upon these motions.

### II.

### *Effective Date of Sentencing Provisions*

The defendants argue that this court erroneously applied a provision of the Narcotics Penalties and Enforcement Act of 1986, Pub.L. 99–570, Tit. I, Subtit. A, 100 Stat. 3207–2 (1986) [hereinafter "Act"], to the offenses for which they were convicted. They assert that the sentencing provisions and the prohibition against probation, parole or suspension of a sentence contained in the Act do not apply to offenses which were committed before November 1, 1987. Thus, the issue is one of statutory construction—what is the effective date of these provisions?

*Description of Statute*

The Act is divided into nine sections, including one section which simply sets forth the title of the act. Of the remaining eight sections, four of them contain an effective date tied to the effective date of 18 U.S.C. § 3583 [hereinafter "Supervised Release Act"], and four of them contain no effective date. The defendants were sentenced under section 1002 of the Act, which amended section 401(b)(1) of the Controlled Substances Act, 21 U.S.C. 841(b)(1). Section 1002 requires that if a sentence of imprisonment is imposed, it must be for a certain minimum number of years with no parole, probation or suspension of the sentence; it contains no effective date.[1] Section 1007 of the Act allows the court limited authority to reduce prison sentences below the mandatory minimum.[2] Its effective date was explicitly tied to the effective date of the Supervised Release Act, which resulted in an effective date of November 1, 1987.[3]

Neither the United States Supreme Court nor the Fourth Circuit has specifically addressed when the sentencing provisions of section 1002 became effective. Thus, there is no controlling authority on this issue.

*Construction of a Statute*

The goal of statutory construction of a federal law is to determine the intent of Congress. *E.g., Alabama v. Tennessee Valley Auth.,* 636 F.2d 1061, 1066 (5th Cir.1981), *cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981). The starting point for discerning congressional intent is the language of the statute itself. *Matala v. Consolidation Coal Co.,* 647 F.2d 427, 429 (4th Cir.1981). However, as noted above, section 1002 does not mention when it becomes effective. Where the text fails to address an issue pertinent to decision, an ambiguity exists.[4] *United States v. Veon,* 538 F.Supp. 237, 243 (E.D.Cal. 1982). *See also Busic v. United States,* 446 U.S. 398, 407, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

Legislative history should be used as a guide to resolve an ambiguity. *E.g., Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). However, there is no reported legislative history of the Act that is helpful in this regard. *See* 1986 U.S. Code Cong. & Admin.News 5393 (no Senate or House Report was submitted with this legislation). When a statute is ambiguous and the legislative history does not resolve the ambiguity, then a court must turn to the canons of construction for assistance.

*Canons of Construction*

■ The Government argues that the issue is resolved by the rule of construction that when a date of effectiveness is not expressly provided, the statute should become effective upon enactment.[5] This is,

---

1. The pertinent provisions of section 1002 are as follows: "[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years ..., a fine ..., or both.... Any sentence *under this subparagraph* shall ... impose a term of supervised release of at least 5 years in addition to such term of imprisonment.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." 21 U.S.C. 841(b)(1).

2. The pertinent provisions of section 1007 are as follows: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

3. Act at sec. 1007, p. 3207–7; Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 235, 1984 U.S.Code Cong. & Admin.News (98 Stat.) 1987, 2031, *amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 1985 U.S.Code Cong. & Admin.News (99 Stat.) 1728.

4. This is perhaps an oversimplification. Even if a statute is silent on a issue, but that issue is addressed by a clearly applicable rule of construction and there are no other reasonable alternative constructions, then a statute can hardly be said to be ambiguous on that issue. However, if there is more than one possible reasonable construction, as is true in the instant case, see discussion, *infra,* then it may be fairly concluded that ambiguity is present.

5. Using this rule for the provisions in question would result in an effective date of October 27, 1986, the date on which President Reagan signed the bill containing the Act.

indeed, a well-established canon of construction. *E.g., United States v. York*, 830 F.2d 885, 892 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988).

Although the early opinions of the United States Supreme Court setting forth the rule were unclear whether it was a rule of law or a rule of construction, *see, e.g., Matthews v. Zane*, 20 U.S. (7 Wheat) 164, 211, 5 L.Ed. 425 (1822), both the First and the Ninth Circuits have made clear that they regard the rule as a rule of construction. *United States v. Ferryman*, 897 F.2d 584 (1st Cir.1990); *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir.1986). This court concludes that this is the better view and that therefore the rule may be trumped in a specific case by another rule of construction which application more closely reflects the intent of Congress.

■ The Fourth Circuit has addressed the issue of when another provision contained in section 1002, the supervised release requirement, *see* n. 1, *supra*, became effective. *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.1988), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988). The court cited *United States v. Byrd*, 837 F.2d 179 (5th Cir.1988), as support for its holding that the effective date was not the date of enactment. 849 F.2d at 860. The court in *Byrd* refused to apply the rule of construction that in the absence of an express date of effectiveness the provision is effective on the date of enactment. 837 F.2d 179. Instead, the court concluded, based on the relationship between the supervised release provisions in section 1002 and 1004 and the congressional history of an earlier act, that the date of effectiveness for the supervised release provisions should be that of section 1004 rather than the date of enactment.[6] *Id.* at 181, n. 8. It should be noted that there is no reference in section 1002 to section 1004 or vice versa. However, the

court concluded that its interpretation resulted in a "more logical arrangement." *Id.*

A court, in construing a statutory provision, is to construe the statute as a whole. *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). In construing the statute as a whole, it is to strive to avoid a construction producing arbitrary, capricious, or senseless distinctions, or an unequal operation of the statute. 73 Am.Jur.2d *Statutes* § 261 (1974). *See also C.I.R. v. Asphalt Products Co., Inc.*, 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987) (judicial perception that a particular result would be unreasonable may enter into construction of ambiguous statutory provisions); *Bechtel Const., Inc. v. United Broth. of Carpenters & Joiners of America*, 812 F.2d 1220, 1225 (9th Cir.1987) (court should avoid construction establishing illogical, unjust, or capricious statutory scheme); *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3rd Cir.1987) (statutes must be interpreted to receive sensible construction, so as not to lead to injustice and oppression).

The rule's rationale is that the court should assume, in the absence of clear evidence to the contrary, that Congress does not intend for any statute to contain arbitrary or capricious distinctions. The Fifth Circuit in *Byrd*, noting the "confusing statutory draftsmanship" of the Act, avoided a construction producing the illogical result of the supervised release provisions of section 1002 becoming effective before the supervised release provisions mandated in the other sections of the Act became effective. 837 F.2d at 181.

*Government's Construction of Statute Produces Arbitrary Hardship*

Under the law existing prior to the effective date of the Act, there was no requirement that a sentence of imprisonment be

---

**6.** Section 1004 is as follows: "(a) The Controlled Substances Act and the Controlled Substances Import and Export Act are amended by striking out "special parole term" each place it appears and inserting "term of supervised release" in lieu thereof."

"(b) The amendments made by this section shall take effect on the date of the taking effect of section 3583 of title 18, United States Code."

for a minimum number of years for the offenses committed by the defendants. *See* 21 U.S.C. § 841(b) (Supp. II 1984). If the date of enactment, October 27, 1986, is assumed to be the effective date for section 1002, then a window of hardship was created for the short period of time between October 27, 1986 and November 1, 1987 in which a defendant is subject to a prison term for a mandatory minimum number of years, while not enjoying the possibility of benefiting from the exception to the mandatory minimum contained in section 1007, *see* n. 2, *supra.*

It is irrelevant whether the particular defendants would have been able to take advantage of section 1007 to achieve a lower sentence. The pertinent issue is the construction of the statute, not its application to a particular defendant or defendants.

It may often occur that Congress increases the penalty for a crime and then subsequently concludes that that penalty is too harsh and therefore reduces it somewhat, thus intentionally creating an intermediate period in which the penalty is harsher than that existing either before or after that period. However, why would Congress have intended to create such a window of hardship, in advance, through the enactment of a single act? In other words, why would Congress and the President, on October 27, 1986, have intended to punish certain persons who committed the crimes in question between October 27, 1986 and November 1, 1987 more harshly and inflexibly than if they had committed those crimes before October 27, 1986 or after November 1, 1987.

The court cannot contemplate any reason that Congress may have had for creating such a distinction between identical crimes and therefore concludes that it is arbitrary and capricious. There is no legislative history that provides evidence that Congress intended to create such a distinction.

While it appears that Congress did not intend to create this distinction, it is most likely that it did not even perceive that such a distinction would be created by the interplay of the statutory provisions if the effective date for the sentencing provisions was to be the date of enactment. The law was apparently hastily drafted and passed. *See United States v. Ferryman,* 897 F.2d 584 (1st Cir.1990).

The Third Circuit, in *Zambardino v. Schweiker,* 668 F.2d 194 (3rd Cir.1981), failed to give effect to the plain language of a statute because there was "little evidence in the legislative history" that Congress sought alter the status quo in a certain respect. *Id.* at 199. In regard to determining the effective date of section 1002, it is not even a question of whether to give effect to the plain language of the statute, but whether to employ a rule of statutory construction which would create an arbitrary distinction in the absence of any legislative history that Congress so intended to create that distinction.

Based on the rule that a court should avoid a construction of an ambiguous statute which results in arbitrary and capricious distinctions, the court concludes that the mandatory minimum sentencing provision of section 1002 became effective at the same time that sections 1004, 1006, 1007 and the supervised release provisions of section 1002 became effective—on November 1, 1987. This result is in conflict with the result reached by applying the rule that, in the absence of an express provision, the date of enactment is the date of effectiveness. However, the court concludes that the result reached by applying the rule against a construction creating arbitrary and capricious distinctions more closely reflects the probable intent of Congress, or rather, what Congress would have intended had it contemplated the consequences springing from the interplay of the statutory provisions.

*Rule of Lenity*

█ This conclusion is further reinforced by the rule of construction known as the "rule of lenity," which requires that an ambiguity in a penal statute, if the intent of Congress is unclear, be construed in favor of lenity. *United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *United States v. Mason,* 611 F.2d 49 (4th Cir.1979). The rule of

lenity applies not only to the substantive provisions of a criminal statute, but also to the provisions providing for the penalties for violations of that statute. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).

The rule of lenity is to be employed as a last resort, when the intent of Congress is unclear even after the application of other aids to construction. *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Thus, even if the court had concluded that it was unclear which canon of construction should be applied in this case, the rule assuming the effective date to be the date of enactment or the rule against a construction resulting in arbitrary distinctions, the rule of lenity mandates the construction more favorable to the defendants, which is the latter rule.

### Contrary Authority

The Government cites a later Fifth Circuit case which restricted the holding in *Byrd* to the supervised release provisions and refused to extend it to provide the same effective date for the no parole provision of section 1002. *United States v. Robles–Pantoja*, 887 F.2d 1250, 1259 (5th Cir. 1989). Thus, the court implied that all of section 1002, except for the supervised release provisions, became effective upon enactment.

Five other circuits have ruled that the mandatory minimum sentencing provisions of section 1002 became effective upon enactment. *United States v. Levy*, 865 F.2d 551, 559 n. 4 (3rd Cir.1989); *United States v. Levario*, 877 F.2d 1483, 1487 (10th Cir. 1989); *United States v. Padilla*, 869 F.2d 372, 382 (8th Cir.1989), *cert. denied*, —— U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989); *United States v. Arrieta*, 855 F.2d 804, 805 (11th Cir.1988); *United States v. Meyers*, 847 F.2d 1408, 1416 (9th Cir.1988). *See also United States v. Ferryman*, 897 F.2d 584 (1st Cir.1990).

The court in *Meyers* based its result on the fact that the 1984 amendments to the penalty provisions of 21 U.S.C. § 841, contained in the Controlled Substances Penalties Amendments Act, Pub.L. No. 98–473,

98 Stat. 2030 (1984), were construed as not being tied to the effective date of the Sentencing Reform Act of 1984, which took effect on November 1, 1987, but were construed as becoming effective upon enactment. 847 F.2d at 1416. However, the 1984 amendments did not contain mandatory minimum sentences, *id.* at 1414; therefore, the arbitrary hardship which such a construction would entail in regard to the Act was not present in regard to the 1984 amendments. The courts in both *Levy* and *Padilla* relied on *Meyers* and its reasoning in reaching their results. 865 F.2d at 559 n. 4; 869 F.2d at 382. The courts in *Levario* and *Arrieta* reached their results with little or no discussion. 877 F.2d at 1487; 869 F.2d at 382.

The court in *Robles–Pantoja* based its ruling on the relationship between sections 1002 and 1004 and the fact that section 1004 involved only supervised release. 887 F.2d at 1258. This court bases its ruling on the relationship between all the sections of the Act, and in particular the relationship between sections 1002 and 1007, a relationship which was not discussed in either *Robles–Pantoja* or in any of the other cases noted above.

Finally, the result reached in those cases is problematic for this circuit because it would result in the piecemeal implementation of section 1002. In fact, the supervised release provision, the mandatory minimum sentencing provision, and the no parole provision are all contained in the same subparagraph of section 1002. Providing different effective dates for those provisions would be contrary to the reasonable assumption that Congress drafted that subparagraph as a unit and that it intended that the individual provisions of the subparagraph function together to create a coherent and rational change to the federal scheme of sentencing.

Two of the six circuits which have held that the mandatory minimum sentencing provisions of section 1002 were effective at the date of enactment have avoided this problem of piecemeal implementation by holding that all of section 1002, including the supervised release provisions, were ef-

fective on the date of enactment. *United States v. Torres,* 880 F.2d 113 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990); *United States v. Gozlon–Peretz,* 894 F.2d 1402 (3rd Cir. 1990). However, because *Whitehead* is the law of this circuit, the only way for this court to avoid piecemeal implementation of section 1002 is to hold that the entire section became effective on November 1, 1987.

### III.

▉ The court notes another defect in the sentences which were imposed, although it was not raised by any of the parties in the instant case. The court, when imposing those sentences, was under the impression that if the Act were the regime under which the defendants were to be sentenced, then the court had no option but to impose the ten year sentences. However, the language of the Act appears to allow the imposition of a fine only.

Section 1002 provides in part that a person involved in the distribution of 5 kilograms of cocaine or more:

> shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, *or both.*

21 U.S.C. § 841(b)(1)(A) (emphasis added).

The Fourth Circuit recently interpreted another provision providing for sentencing for certain drug-related offenses, 21 U.S.C. § 844(a). *United States v. Jones,* 902 F.2d 1152 (4th Cir.1990). That provision's syn-

tax is nearly identical to that of the above provision.[7] The Fourth Circuit concluded that the language of the provision was plain and conferred upon the sentencing court the discretion to impose a fine rather than a prison term of at least five years. *Id.*

The Fourth Circuit, however, concluded that the legislative history of the statute containing the provision did not contradict the plain language of the provision; the court left open the possibility that if the legislative history did clearly indicate a legislative intent contrary to the language of the statute, then the statute would be construed consistent with that intent. *See id.,* at 1153. The provision analyzed by the Fourth Circuit in *Jones* was passed in an act different from the act containing section 1002 and therefore has a legislative history different from that of section 1002.[8]

The First Circuit, in interpreting a sentencing provision which has the prison term, fine, "or both" structure[9] and which is contained in the same Act as section 1002, held that its legislative history, along with certain accompanying statutory provisions, clearly showed that the "or both" language to be a product of inadvertent draftsmanship and that Congress intended that fines were to be imposed only as an additional, and not as the sole penalty. *United States v. Colon–Ortiz,* 866 F.2d 6, 9 (1st Cir.1989), *cert. denied,* —— U.S. ——, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989). However, the court asserted that the apparent inconsistency between the language of the provision, which allows for only a fine, and certain accompanying provisions, which suggest that prison sentences are required, creates a "notice deficiency" which implicates the Due Process Clause notice requirements.[10] *Id.*

---

7. The relevant part of the provision in section 844(a) provides that "a person convicted under this subsection ... shall be fined under Title 18, or imprisoned not less that 5 years and not more than 20 years, or both...." 21 U.S.C. § 844(a).

8. The provision analyzed by the Fourth Circuit was passed in the Anti–Drug Abuse Act of 1988. *See* Pub.L. 100–690, Tit. VI, § 6371, 102 Stat. 4370 (1988).

9. The provision provides that the sentence shall be "a term of imprisonment which may not be less than 5 years ..., a fine ..., or both." 21 U.S.C. § 841(b)(1)(B).

10. The court in *Colon–Ortiz* noted that the following provisions suggested that prison terms were mandatory: "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No

Section 1002 has the same legislative history as the provision that the First Circuit construed and also contains certain language which suggests that prison sentences are required[11]; thus, the conclusions the First Circuit reached in regard to the "or both" language in the provision it construed apply equally to the "or both" language in section 1002. Therefore, this court will construe section 1002 in light of the due process concerns noted by the First Circuit in *Colon–Ortiz*.

### Due Process Notice Requirements

The Constitutional right to due process requires that a penal statute be clear on its face. 866 F.2d at 9. The United States Supreme Court has held that the Due Process Clause of the Fifth Amendment is violated by a penal statute which "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). The court in *Colon–Ortiz* held that this principle also applies to the penalty provisions of a penal statute: the Due Process Clause requires that a penalty provision be drafted so that a "person of ordinary intelligence should not have to guess at [its] meaning." 866 F.2d at 9. *See also United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979) ("vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute.").

The court in *Colon–Ortiz* observed that the inconsistency in the provisions it was construing "constitutes a notice deficiency and raises serious due process concerns" and concluded that it could not "say that [the provisions] as drafted affords fair notice to individuals as to the consequences of violating the ... liability provision." 866

F.2d at 9. The court, however, determined that the defendant in that case was not harmed by the due process deficiency in the statute because the trial judge had stated that he believed, in any case, that a term of imprisonment was appropriate for the defendant. *Id.* at 10–11. No such determination has been made by the court regarding the defendants in the instant case.

Finally, the court in *Colon–Ortiz* addressed the argument of the defendant that all of section 841(b)(1)(B) should be declared unconstitutional because of the notice deficiency created by the inconsistency between the language suggesting mandatory prison terms and the "or both" language. *Id.* at 11. The court rejected this argument by stating that "[t]he notice deficiency in the statute can be cured easily by striking the 'or both' language, which clarifies on the face of the statute what penalties defendants risk in violating the Section 841(a)(1) liability provision." *Id.* Thus, the court ruled "that the correct interpretation of the statute is to disregard the 'or both' language," thereby bringing the statute into conformity with the intent of Congress as evidenced by the context of the statute and its legislative history. *Id.*

This court is puzzled by what the First Circuit meant when it stated that it was curing the notice deficiency by striking out the confusing "or both" language. This court had heretofore naively believed that only Congress could delete words from a federal statute. Furthermore, the First Circuit appears to believe that its deletion of the confusing words had a retroactive effect, curing the notice deficiency in regard to events which occurred before the court had even issued its opinion. Inexplicably, the copy of the United States Code which is located in this court's library still contains the words "or both" and the court

person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." 21 U.S.C. § 841(b)(1)(B).

**11.** The language contained in section 1002 which suggests that prison terms are mandatory is as follows: "Notwithstanding any other provi-

sion of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." 21 U.S.C. § 841(b)(1)(A).

is under the strong impression that the publishers of that copy will strike out those words in a subsequent supplement only at the command of Congress.

The First Circuit appears to have lost its way in its analysis by confusing the interpretation of a statute with a determination of whether it complies with the notice requirements of the Due Process Clause. It is true that courts, when interpreting statutes, have occasionally refused to give effect to a statutory provision which was clearly the result of legislative inadvertence and is contrary to the intent of Congress, *see e.g., United States v. Babcock,* 530 F.2d 1051, 1053 (D.C.Cir.1976). However, when Congressional intent is primarily discerned from legislative history, the appropriateness of such a course of interpretation has been questioned on the principle that Congress should not be able to effect its intent "simply by talking about it [in the Congressional Record] with unmistakable clarity," when that intent is contrary to the text of the law. *See Tafflin v. Levitt,* — U.S. ——, 110 S.Ct. 792, 802, 107 L.Ed.2d 887 (1990) (Scalia, J., concurring).[12]

Regardless of the merits of such a method of interpretation, the court concludes that its use in *Colon–Ortiz* is not consistent with the notice requirements of the Due Process Clause. The Roman emperor Caligula holds a particularly odious place in the history of jurisprudence because of his practice of publishing laws by inscribing them in very small letters and so high on the walls of the Forum that citizens could not read them.[13] However, the laws need not be physically hidden for citizens not to receive fair warning of them. A modern day Caligula can achieve the same result by giving the published laws hidden mean-

ings found only in the Congressional Record and which are contrary to the texts of the laws.

As the Fourth Circuit concluded in *Jones,* that the language of the "or both" provision of 21 U.S.C. § 844(a) is plain, this court concludes likewise in regard to the language of the "or both" provision in section 1002. While the court in *Colon–Ortiz* noted an inconsistency between the "or both" provision it analyzed and the provisions noted in n. 10, *supra,* the inconsistency is more apparent than real. The provisions in n. 10, *supra,* and the provisions in section 1002 regarding parole, probation, and suspension of the sentence, see n. 11, *supra,* may be reasonably construed as consistent with their respective "or both" provisions by construing them as concerning only those persons who do receive a prison term.

Because the penal statute in question may be given a reasonable construction which reconciles its apparently conflicting provisions, the court concludes that a different construction, even if it reflects the clear intent of Congress as evidenced in the legislative history of the statute, violates the Due Process Clause if such construction nullifies language in the statute and has the effect of making the statute more harsh to a defendant than if that language is given effect.

Fortunately, it is not necessary to declare section 1002 unconstitutional. The harmful consequences to a defendant of any "notice deficiency" disappear if the provision is construed as giving the trial court the option of imposing only the fine: no defendant can be better off under the alternative construction of the provision, which requires a mandatory prison term.

**12.** Indeed, such a course of interpretation has an Alice in Wonderland quality to it. It places the court in the role of the White Rabbit who, upon hearing the King announce that something was "very important," responded with "Unimportant, your Majesty means, of course." "Unimportant, of course, I meant," the King replied. L. Carroll, Alice in Wonderland.

**13.** *Huddleston v. United States,* 415 U.S. 814, 834, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) (Doug-

las, J., dissenting) (quoting Suetonius' The Lives of the Twelve Caesars as follows: "When taxes of this kind had been proclaimed, but not published in writing, inasmuch as many offenses were committed through ignorance of the letter of the law, he [Caligula] at last, on the urgent demand of the people, had the law posted up, but in a very narrow place and in excessively small letters, to prevent the making of a copy.").

Therefore, this court holds that a construction of the statutory provision which does not allow the trial court the discretion to impose a fine only is violative of the Due Process Clause of the Fifth Amendment. A court is to construe a statute so that it is not unconstitutional, if such a construction is a reasonable one. *E.g., Harriss*, 347 U.S. at 618, 74 S.Ct. at 812. Accordingly, the court holds that the proper construction of the provision is one which provides the sentencing court the discretion to impose only a fine.

## CONCLUSION

Because the court determines that the mandatory sentencing provisions of section 1002 were not in effect for offenses committed prior to November 1, 1987, it concludes that those provisions do not govern the instant case and were improperly applied to the sentencing of the defendants. However, if the mandatory sentencing provisions were effective at the date of enactment, the court concludes that the statute allows the court the discretion to impose a fine only upon the defendants for their violations of 21 U.S.C. § 841.

The court will hold a hearing to determine the proper sentences to be imposed upon the defendants. If the proper sentence for either defendant is determined to be lower than that which was imposed, the court will accordingly grant that defendant's motion to reduce his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. The court will also determine the appropriate sentence under the assumption that the sentencing provisions of section 1002 were effective when the crimes in question were committed. IT IS SO ORDERED.

**Randall DETRO**

v.

**Buddy ROEMER, et al.**

**Civ. A. No. 89–5455.**

United States District Court,
E.D. Louisiana.

June 4, 1990.

See also, 732 F.Supp. 673.

Risley C. Triche, Napoleonville, La., for plaintiff.

Stephen M. Irving, Baton Rouge, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Randall Detro is the former Director of the Library at Nicholls State University. After an audit of the library revealed some problems with the cataloging and purchasing of library acquisitions, he was discharged. He now brings this civil rights action against Governor Buddy Roemer, Bill Lynch, the former Inspector General, and three former employees of the Office of the Inspector General, David Morales, Elizabeth Schexnayder, and Joe Green. In an earlier decision on the defendants' motion to dismiss, the Court held that the

plaintiff's complaint states § 1983 claims for violation of Fourth, Fifth, Sixth and Fourteenth Amendment rights. Defendants now move for summary judgment.

The plaintiff's complaint, which was filed on December 22, 1989, states a number of discrete events: that the defendants searched and seized his office on July 22, 1988, that he was interrogated without counsel until August 22, 1988, that on December 19, 1988 the defendants issued a report which libeled the plaintiff, and that on January 27, 1989 he was discharged from the position of Director of the Library. Except for his discharge, all of these events occurred more than one year before the filing of the plaintiff's complaint. Defendants contend that claims based on these acts are prescribed.

I. *A Continuing Violation, Or Not?*

■ In *Wilson v. Garcia,* .471 U.S. 261, 276–280, 105 S.Ct. 1938, 1947–1950, 85 L.Ed.2d 254 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all § 1983 actions is the state statute of limitations governing actions for personal injury. Thus, the plaintiff's claim is subject to the one year prescriptive period for delictual actions set out in La.C.C. Art. 3492.

■ The plaintiff contends that the prescriptive period does not begin to run until the wrongful conduct ends. His position has been rejected by other courts. In *McCune v. City of Grand Rapids,* 842 F.2d 903 (6 Cir.1988), McCune argued that his wrongful arrest, wrongful incarceration, wrongful prosecution, and the wrongful suppression of evidence constituted a continuing tort and, therefore, the statute of limitations did not accrue until the continuing wrongful conduct ended. The Sixth Circuit rejected this argument:

> "the false arrest, malicious prosecution, and wrongful suppression of exculpatory evidence constitute discrete wrongs (i.e., separate torts with separate elements), and they will not be viewed by this court as a continuing violation."

842 F.2d at 906. The court went on to find that the claim for false arrest arose on the date the arrest was made and that the claim for malicious prosecution arose with the favorable termination of the underlying criminal proceeding. The Second Circuit rejected a similar argument in *Singleton v. City of New York,* 632 F.2d 185, 191 & n. 5 (2 Cir.1980) *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

■ A comparison to cases involving a conspiracy to deprive one's civil rights supports *McCune.* Where a conspiracy is alleged, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff. Thus, the plaintiff may recover only for the overt acts that have occurred within the limitations period. The plaintiff cannot toll the running of the statute of limitations simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy. *Scherer v. Balkema,* 840 F.2d 437 (7 Cir.1988); *Gibson v. United States,* 781 F.2d 1334 (9 Cir.1986).

■ The principles just discussed must apply to this case; plaintiff's argument that the actions of the defendants constitute a continuing tort must fail. The plaintiff's claims for deprivation of Fourth, Fifth, Sixth, and Fourteenth Amendment rights are separate wrongs which do not comprise a continuing violation. The plaintiff cannot toll the running of the statute of limitations by asserting that a series of wrongs were committed by the same defendants. The Court must therefore examine each discrete claim to determine whether it is barred by the applicable statute of limitations. *See McCune,* 842 F.2d at 906. Guiding this inquiry is the notion that the prescriptive period for a § 1983 claim begins to run when the plaintiff knows or has reason to know of the injury which forms the basis of his claim. *Peter Henderson Oil v. City of Port Arthur,* 806 F.2d 1273, 1275 (5 Cir.1987).

II. *The Claims*

A.

■ Plaintiff's first claim is that the defendants' search and seizure of his office deprived him of rights secured by the Fourth Amendment. The search and sei-

zure, according to plaintiff's complaint, occurred on July 22, 1988. In his opposition to the defendants' motion, plaintiff states that he was present when his office was padlocked. At that time, he knew or had reason to know of the injury which is the basis of his claim of deprivation of Fourth Amendment rights. This claim is therefore barred by the one year prescriptive period.

### B.

Plaintiff's second claim is that the defendants deprived him of rights secured by the Fifth Amendment when they conducted a custodial interrogation without informing him of his right to remain silent. The plaintiff's § 1983 cause of action for failure to inform him of his Fifth Amendment rights accrues on the date on which the interrogation took place. Plaintiff's complaint states that he was ordered to appear for interrogation several times until August 22, 1988. Thus, plaintiff knew or had reason to know on August 22, 1988, at the latest, of the injury which is the basis of his claim for deprivation of Fifth Amendment rights. This claim is also barred by the one year prescriptive period.

### C.

Plaintiff's third claim is for deprivation of Sixth Amendment rights. This claim arises out of the same interrogations that occurred through August 22, 1988 and is therefore similarly barred.

### D.

Plaintiff's final claim is for deprivation of Fourteenth Amendment rights. Plaintiff alleges in his complaint that on December 19, 1988 the defendants held a press conference and distributed a report about the investigation of Nicholls State that libeled him. Plaintiff was later discharged, on January 27, 1989. Discharge from public employment under circumstances that put the employee's reputation at stake gives rise to a liberty interest under the Fourteenth Amendment which entitles one to a procedural opportunity to clear one's name. *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5 Cir.1989). In its previous order, the Court held that plaintiff's complaint failed to state a § 1983 claim for the denial of a name clearing hearing upon which relief can be granted.

### E.

Discharge from public employment is not the only interest that can establish a liberty interest in one's reputation. When the defamation occurs in connection with the violation of other kinds of constitutional rights, the injury to the plaintiff's reputation implicates the deprivation of a liberty interest. *Marrero v. City of Hialeah*, 625 F.2d 499 (5 Cir.1980). Here, the defendants issued a report criticizing the plaintiff on December 19, 1988, subsequent to the alleged violations of plaintiff's Fourth, Fifth and Sixth Amendment rights. Plaintiff's due process claim filed on December 22, 1989, more than one year later, therefore appears to be facially barred.

When an action appears to have prescribed on the face of the complaint, the plaintiff bears the burden of establishing facts which would interrupt or suspend prescription. *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902 (5 Cir.1985). The plaintiff has failed to meet this burden. He has offered no evidence tending to show that he did not know or had no reason to know that the allegedly libelous statements had been made on December 19, 1988, or their impact on him. Accordingly, the plaintiff's Fourteenth Amendment claim of deprivation of a liberty interest in his reputation because of a libel is time barred.[1]

---

respond and post-termination administrative procedures.  Thus, to the extent that the plaintiff claims the denial of due process based solely

upon his discharge, defendants are entitled to summary judgment on this claim.