# UNITED STATES *v.* MORTON

No. 83–916.  Argued April 25, 1984—Decided June 19, 1984

*Michael W. McConnell* argued the cause *pro hac vice* for the United States. With him on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, Leonard Schaitman, Wendy M. Keats,* and *Mary S. Mitchelson.*

*Kaletah N. Carroll* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether the United States is liable for sums withheld from the pay of one of its employees because it complied with a direction to withhold those sums contained in a writ of garnishment issued by a court without personal jurisdiction over the employee.

On December 27, 1976, respondent, a Colonel in the United States Air Force, was stationed at Elmendorf Air Force Base in Alaska. On that date Elmendorf's Finance Office received by certified mail a writ of garnishment, accompanied by a copy of a judgment against respondent that had been issued by the Circuit Court for the Tenth Judicial Circuit of Alabama in a divorce proceeding. The writ, which was in the regular form used in Alabama, directed the Air Force to withhold $4,100 of respondent's pay to satisfy sums due under the judgment "for alimony and child support." The Finance Office promptly notified respondent that it had received the writ. On advice from an Air Force attorney, respondent told the Finance Office that the state court's order was void because the Alabama court had no jurisdiction over him. Nevertheless, the Finance Officer honored the writ and paid $4,100 to the Clerk of the Alabama court, deducting that amount from respondent's pay. Subsequently additional writs of garnishment were served on the Air Force with similar results.

Respondent apparently never made any attempt to contest the garnishment itself beyond his initial protest to the Elmendorf Finance Office.[1] Eventually, however, he in ef-

---

*Dan M. Kinter* filed a brief for Sacramento County, California, et al. as *amici curiae* urging reversal.

[1] The trial court found that after respondent was first notified of the service of the writ, the Air Force attorney he consulted assured him that he could ignore the writ because he was not within the jurisdiction of the state court. Apparently the only remedy respondent has ever sought with respect to the garnishment of his salary is the instant action.

fect collaterally attacked the garnishment by bringing this action against the United States to recover the amounts that had been withheld from his pay and remitted to the Alabama court. The Government took the position that it had a complete defense since Congress has by statute provided:

> "Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section." 42 U. S. C. § 659(f).

The trial judge first noted that the Alabama writ was on the regular form used by the Alabama courts. Thus, he did not disagree with the Government's position that the writ was "regular on its face" within the meaning of the statute. He held, however, that the writ was not "legal process" within the meaning of § 659(f) because the statutory definition of that term requires that it be issued by a "court of competent jurisdiction."[2] He reasoned that the portion of the divorce decree ordering respondent to make alimony and child support payments had not been issued by a court of competent jurisdiction because the Alabama court did not have personal jurisdiction over respondent. Since respondent was not domiciled in Alabama at the time of the divorce proceedings, and since Alabama did not then have a statute authorizing personal service on nonresidents for child sup-

---

[2] The statute provides:

"The term 'legal process' means any writ, order, summons, or other similar process in the nature of garnishment, which—

"(1) is issued by (A) a court of competent jurisdiction within any State, territory, or possession of the United States . . . and

"(2) is directed to, and the purpose of which is to compel, a governmental entity, which holds moneys which are otherwise payable to an individual, to make a payment from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support or make alimony payments." 42 U. S. C. § 662(e).

port or alimony and could not assert jurisdiction under either its own law or the Due Process Clause because it lacked sufficient contacts with respondent, the trial judge concluded that the Alabama judgment on which the garnishment orders were based was void for lack of jurisdiction. Accordingly, the trial judge held that respondent was entitled to recover the amounts withheld from his pay from the United States.

The Court of Appeals for the Federal Circuit affirmed, 708 F. 2d 680 (1983). It concluded that when an obligor notifies the Government that the court issuing the garnishment order does not have personal jurisdiction over him, the order does not constitute "legal process regular on its face" within the meaning of the statute. Judge Nies dissented, reasoning that the statute required only that the state court have subject-matter jurisdiction to enter the writ of garnishment, and that the notice respondent had provided the disbursing officer did not affect the question whether the Alabama court was a "court of competent jurisdiction."

Because the holding of the Federal Circuit creates a substantial risk of imposing significant liabilities upon the United States as a result of garnishment proceedings, and because the decision below created a conflict in the Circuits,[3] we granted the Government's petition for certiorari, 465 U. S. 1004 (1984).

I

Ten years ago Congress decided that compensation payable to federal employees, including members of the Armed Services, should be subject to legal process to enforce employees' obligations to provide child support or make alimony payments. Section 459(a) of the Social Services Amendments of 1974, 88 Stat. 2357–2358, was enacted as a result. As amended, it currently provides:

> "Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is

---

[3] See *Calhoun* v. *United States*, 557 F. 2d 401 (CA4), cert. denied, 434 U. S. 966 (1977).

based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments." 42 U. S. C. § 659(a).

In 1977 Congress amended the statute by specifying a procedure for giving notice to affected employees, directing that the normal federal pay and disbursement cycle should not be modified to comply with garnishment writs, authorizing promulgation of appropriate implementing regulations, and defining terms such as "alimony," "child support," and "legal process." It also added subparagraph (f), the provision at issue in this case. See 91 Stat. 157–162.[4]

## II

We assume, as does the Government, that the Alabama court lacked jurisdiction over respondent when it issued its writs of garnishment. Based on that assumption, respondent defends the judgment below by arguing that the Alabama court was not a "court of competent jurisdiction," and hence its orders could not satisfy the statutory definition of "legal process."[5]

---

[4] Although at least the initial garnishment in this case occurred prior to the passage of the 1977 amendment, the parties agree that the statute as amended in 1977 applies to this case.

[5] This is, however, the only ground on which respondent attacks the enforcement of the writs of garnishment. Thus, no question is raised concerning the sufficiency of the notice and opportunity to contest the garnishment that respondent received prior to the execution of the writs, see generally *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922 (1982); *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601 (1975); *Fuentes* v. *Shevin*, 407 U. S. 67 (1972); *Sniadach* v. *Family Finance Corp.*, 395

If we were to look at the words "competent jurisdiction" in isolation, we would concede that the statute is ambiguous. The concept of a court of "competent jurisdiction," though usually used to refer to subject-matter jurisdiction,[6] has also been used on occasion to refer to a court's jurisdiction over the defendant's person.[7] We do not, however, construe statutory phrases in isolation; we read statutes as a whole.[8] Thus, the words "legal process" must be read in light of the immediately following phrase—"regular on its face." That phrase makes it clear that the term "legal process" does not require the issuing court to have personal jurisdiction.

Subject-matter jurisdiction defines the court's authority to hear a given type of case, whereas personal jurisdiction protects the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum. See *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694, 701–703, and n. 10 (1982). The strength of this interest in a particular case cannot be ascertained from the "face" of the process; it can be

---

U. S. 337 (1969); and in particular no question is raised as to whether respondent was afforded an adequate opportunity to contest the jurisdiction of the court issuing the writ in the jurisdiction where the writ was enforced, see generally *Vanderbilt* v. *Vanderbilt*, 354 U. S. 416 (1957); *May* v. *Anderson*, 345 U. S. 528 (1953); *Estin* v. *Estin*, 334 U. S. 541, 548–549 (1948); *Griffin* v. *Griffin*, 327 U. S. 220 (1946).

[6] As far back as *Pennoyer* v. *Neff*, 95 U. S. 714 (1878), we drew a clear distinction between a court's "competence" and its jurisdiction over the parties:

"To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or his voluntary appearance." *Id.*, at 733.

[7] See Restatement (Second) of Judgments § 11, Comment *a* (1982).

[8] See, *e. g.*, *Stafford* v. *Briggs*, 444 U. S. 527, 535 (1980); *Philbrook* v. *Glodgett*, 421 U. S. 707, 713 (1975); *Chemehuevi Tribe of Indians* v. *FPC*, 420 U. S. 395, 403 (1975); *Chemical Workers* v. *Pittsburgh Plate Glass Co.*, 404 U. S. 157, 185 (1971).

determined only by evaluating a specific aggregation of facts, as well as the possible vagaries of the law of the forum, and then determining if the relationship between the defendant— in this case the obligor—and the forum, or possibly the particular controversy, makes it reasonable to expect the defendant to defend the action that has been filed in the forum State.[9] The statutory requirement that the garnishee refer only to the "face" of the process is patently inconsistent with the kind of inquiry that may be required to ascertain whether the issuing court has jurisdiction over the obligor's person.[10]

Nor can the plain language of § 659(f) be escaped simply because the obligor may have provided some information that raises a doubt concerning the issuing court's jurisdiction over him, as he must do under the Court of Appeals' holding. In such a case the determination would be based on the information provided by the obligor, rather than, as is required by the statute, "on the face" of the writ of garnishment. The writ is simply a direction to the garnishee; it contains no information shedding light upon the issuing court's jurisdiction over the obligor. Inquiry into the issuing court's jurisdiction over the debtor cannot be squared with the plain language of the statute, which requires the recipient of the writ to act on the basis of the "face" of the process.

## III

The legislative history does not contain any specific discussion of the precise question presented by this case. It does,

---

[9] See, e. g., Keeton v. Hustler Magazine, Inc., 465 U. S. 770, 775–776 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286, 292 (1980); Shaffer v. Heitner, 433 U. S. 186, 203–204 (1977).

[10] The Comptroller General wrote in a similar case:

"The inquiry into whether an order is valid on its face is an examination of the procedural aspects of the legal process involved, not the substantive issues. Whether a process conforms or is regular 'on its face' means just that. Facial validity of a writ need not be determined 'upon the basis of scrutiny by a trained legal mind,' nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know." In re Mathews, 61 Comp. Gen. 229, 230–231 (1982).

however, show that Congress did not contemplate the kind of inquiry into personal jurisdiction that the Court of Appeals' holding would require, and it plainly identifies legislative objectives that would be compromised by requiring such an inquiry.

In colloquy on the floor of the House during the consideration of the 1974 legislation, two of its principal sponsors made it clear that no more than the face of the writ of garnishment was to be the basis for the garnishment of a federal employee's salary:

> "Mr. ST GERMAIN. Essentially, the mother or the wife goes into the State court and gets a judgment, and then proceeds on the judgment, on the execution of same, and proceeds with the garnishment; is that not correct?
>
> "Mr. ULLMAN. The gentleman is correct.
>
> "Mr. ST GERMAIN. And there are no other conditions precedent?
>
> "Mr. ULLMAN. The garnishment is on the basis of the court order or decision. It is on the basis of the court order or by trial by the court in the case of a father or mother failing to live up to his or her obligations.
>
> "Mr. ST GERMAIN. That is correct. Or with alimony?
>
> "Mr. ULLMAN. That is right, with alimony." 120 Cong. Rec. 41810 (1974).[11]

---

[11] Moreover, the floor debates also indicate that Congress envisioned garnishments based on foreign judgments against nonresident debtors under the statute:

"[Mr. WHITE.] As I read the conference report, a paternity suit could be brought in another State, a judgment rendered in that State, and then the judgment brought back into Texas where there is no paternity suit action line and brought into a U. S. Federal court and file a garnishment against social security and veterans' benefits, is this true?

"Mr. PETTIS. I understand that is correct." 120 Cong. Rec. 41813 (1974).

Of course, it would be impossible to inquire into personal jurisdiction based on nothing more than the court order. No such inquiry could have been intended.[12]

The liability of private employers under similar circumstances is also illuminating. The legislative history, as well as the plain language of § 659(a), indicates that Congress intended the Government to receive the same treatment as a private employer with respect to garnishment orders.[13]  A

---

[12] The 1977 amendment of the statute, adding § 659(f), did not alter this state of affairs, since it specifies only those circumstances in which the Government is not liable. In fact, the legislative history of the amendment indicates that it was intended only to clarify the law. See H. R. Conf. Rep. No. 95–263, p. 35 (1977); 123 Cong. Rec. 12909 (1977) (remarks of Sens. Curtis and Nunn). Inquiry into personal jurisdiction would actually be inconsistent with the intent of the 1977 amendment of the statute. In a memorandum explaining the amendment, its sponsors indicated that they intended federal agencies to respond to garnishment orders promptly:

"The amendment provides specific conditions and procedures to be followed under section 459. It specifies that service of legal process brought for the enforcement of an individual's obligation to provide child support or alimony is to be accomplished by certified or registered mail, or by personal service, upon the person designated to accept the service for a government entity. The process must be accomplished by sufficient data to permit prompt identification of the individual and the moneys which are involved. These provisions will permit inexpensive and expedited service and will enable the agency to respond in an efficient way." Id., at 12912.

This explanatory material was taken from the Report on a virtually identical bill which had been reported by the Senate Finance Committee during the preceding session of Congress. See S. Rep. No. 94–1350, p. 4 (1976). The 1977 amendment's language and intent was substantially the same as this earlier version, 123 Cong. Rec. 12909 (1977) (remarks of Sens. Curtis and Nunn). This twice-stated congressional goal of speed and efficiency would be seriously undermined if the Government could not rely on the face of the garnishment order and instead had to inquire into the circumstances relating to the issuing court's jurisdiction over the obligor.

[13] For example, the explanatory material accompanying the 1977 amendment stated:

"It should be emphasized that the fact that section [6]59 is applicable to particular moneys does not necessarily mean that those moneys will be

construction of the statute that would impose liability on the Government for honoring a writ issued by a court with subject-matter jurisdiction would be inconsistent with the law applicable to private garnishees. It has long been the rule that at least when the obligor receives notice of the garnishment, the garnishee cannot be liable for honoring a writ of garnishment. See *Harris* v. *Balk*, 198 U. S. 215, 226–227 (1905). For example, after imposing on all employers a duty to honor writs of garnishment, the District of Columbia Code, which Congress itself enacted, see 77 Stat. 555, provides:

> "Any payments made by an employer-garnishee in conformity with this section shall be a discharge of the liability of the employer to the judgment debtor to the extent of the payment." D. C. Code § 16–573(c) (1981).

The law in Alaska and Alabama is to similar effect,[14] as it is in the great majority of jurisdictions.[15] Thus, to hold the Gov-

---

subject to legal process; it merely means that the question of whether such moneys will be subject to legal process will be determined in accordance with State law in like manner as if the United States were a private person." *Id.*, at 12914.

See also S. Rep. No. 94–1350, p. 9 (1976); S. Rep. No. 93–1356, pp. 53–54 (1974); 120 Cong. Rec. 40338–40339 (1974) (remarks of Sen. Montoya); *id.*, at 41810 (remarks of Reps. Ullman and Waggonner).

[14] See Ala. Code §§ 6–6–453(a), 6–6–461 (1975); Alaska Stat. Ann. § 09.40.040 (1983).

[15] See, *e. g.*, Ariz. Rev. Stat. Ann. § 12–1592 (1982); Ark. Stat. Ann. § 31–146 (1962); Cal. Civ. Proc. Code Ann. § 706.154(b) (West Supp. 1984); Idaho Code § 8–510 (1979); Ill. Rev. Stat., ch. 110, § 12–812 (1983); Ind. Code § 34–1-11–29 (1982); Iowa Code § 642.18 (1983); Md. Cts. & Jud. Proc. Code Ann. § 11–601(a) (1984); Mass. Gen. Laws Ann., ch. 246, § 43 (West 1959); Mich. Comp. Laws § 600.4061(3) (1968); Minn. Stat. § 571.54 (1982); Miss. Code Ann. § 11–35–37 (1972); Mo. Rev. Stat. § 525.070 (1978); N. H. Rev. Stat. Ann. § 512:38 (1983–1984); N. J. Stat. Ann. § 2A:17–53 (West Supp. 1984); N. Y. Civ. Prac. Law § 5209 (McKinney 1978); N. D. Cent. Code § 32–09.1–15 (Supp. 1983); Ohio Rev. Code Ann. § 2716.21(D) (Supp. 1983); Okla. Stat., Tit. 12, § 1233 (1961); Ore. Rev. Stat. § 29.195 (1983);

ernment liable in this case would be to conclude that Congress intended to adopt a different standard for liability than would be applicable to a private employer. Such a conclusion is foreclosed by the statute and its legislative history.

Finally, the underlying purpose of § 659 is significant. The statute was enacted to remedy the plight of persons left destitute because they had no speedy and efficacious means of ensuring that their child support and alimony would be paid.[16] Burdening the garnishment process with inquiry into

---

S. D. Codified Laws § 21–18–32 (1979); Tenn. Code Ann. § 29–7-117 (1980); Vt. Stat. Ann., Tit. 12, § 3081 (1973); Wash. Rev. Code § 7.33.200 (1983); W. Va. Code § 38–7-25 (1966); Wis. Stat. § 812.16(2) (1981–1982); Wyo. Stat. § 1–15–302 (1977).

[16] Senator Montoya said:

"The modification proposed by the committee provides that money due from the United States to any individual citizen, including service men and women, may be garnished as a result of legal process for payment of alimony and child support.

"What this really means is that civil servants and military personnel can be forced to accept full responsibility for care of families—especially dependent children—in the same way that other Americans can.

"It is tragic that there are any men or women in the United States who would willingly desert their children, leaving wives and families to struggle alone or to go on our already overburdened welfare rolls.

"However, as any member of the judiciary or legal profession can tell you, the truth is that there are always some who try to avoid responsibility and who must be forced to pay debts.

.        .        .        .        .

"Mr. President, the child support proposal contained in the committee substitute will give us an opportunity to prove to these women and children that justice exists for them, too, in the United States. The proposal is not new. I believe it is time for us to make sure that this small change is made in our law in order to correct what is patently a disgraceful situation. We must give the wives and children of Federal employees and retirees the same legal protections which we have provided for all other American women and children." 120 Cong. Rec. 40338–40339 (1974).

To similar effect, see S. Rep. No. 93–1356, pp. 43–44 (1974); 120 Cong. Rec. 40323 (1974) (remarks of Sen. Long); id., at 41809 (remarks of Rep. Ullman). See also H. R. Rep. No. 92–481, pp. 17–18 (1971).

the state court's jurisdiction over the obligor can only frustrate this fundamental purpose as a consequence of the resulting delay in the process of collection. And "[b]ecause delay so often results in loss of substantial rights, the effect frequently will be also to make impossible the ultimate as well as the immediate collection of what is due; and to substitute a right of lifelong litigation for one of certain means of subsistence." *Griffin* v. *Griffin*, 327 U. S. 220, 239, n. 4 (1946) (Rutledge, J., dissenting in part). Such a result could not be more at odds with congressional intent.

## IV

As part of the 1977 amendment, Congress authorized the promulgation of "regulations for the implementation of the provisions of section 659," 42 U. S. C. § 661(a). In the last sentence of § 659(f), Congress indicated that the United States could not be held liable for honoring a writ of garnishment so long as payment is made in accordance with these regulations. Because Congress explicitly delegated authority to construe the statute by regulation, in this case we must give the regulations legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute.[17] Moreover, implementing regulations which simplify a disbursing officer's task in deciding whether to honor a writ of garnishment are entitled to special deference, since that was the precise objective of Congress when it delegated authority to issue regulations.[18]

The relevant regulations squarely address the question presented by this case. The regulations require that within 15 days of the service of process, the garnishee must give notice of service and a copy of the process to the employee. 5 CFR § 581.302(a) (1984). The regulations further provide that the garnishee entity must honor the process except in

---

[17] See *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 44 (1981); *Batterton* v. *Francis*, 432 U. S. 416, 425–426 (1977).

[18] See 123 Cong. Rec. 12912–12913 (1977); S. Rep. No. 94–1350, p. 6 (1976).

specified situations, none of which involves the issuing court's lack of jurisdiction over the employee.[19]   They then state:

> "If a governmental entity receives legal process which, on its face, appears to conform to the laws of the jurisdiction from which it was issued, the entity shall not be required to ascertain whether the authority which issued the legal process had obtained personal jurisdiction over the obligor."   § 581.305(f).[20]

Thus, the regulations definitively resolve the question before us.[21]   They cannot possibly be considered "clearly in-

---

[19] The regulations provide:

"The governmental entity shall comply with legal process, except where the process cannot be complied with because:

"(1) It does not, on its face, conform to the laws of the jurisdiction from which it was issued;

"(2) The legal process would require the withholding of funds not deemed moneys due from, or payable by, the United States as remuneration for employment;

"(3) The legal process is not brought to enforce legal obligation(s) for alimony and/or child support;

"(4) It does not comply with the mandatory provisions of this part;

"(5) An order of a court of competent jurisdiction enjoining or suspending the operation of the legal process has been served on the governmental entity; or

"(6) Where notice is received that the obligor has appealed either the legal process or the underlying alimony and/or child support order, payment of moneys subject to the legal process shall be suspended until the governmental entity is ordered by the court, or other authority, to resume payments.   However, no suspension action shall be taken where the applicable law of the jurisdiction wherein the appeal is filed requires compliance with the legal process while an appeal is pending.   Where the legal process has been issued by a court in the District of Columbia, a motion to quash shall be deemed equivalent to an appeal."   5 CFR § 581.305(a) (1984).

[20] See also 48 Fed. Reg. 811, 26279 (1983).

[21] Respondent argues that § 581.305(f) is not entitled to deference because it was not promulgated by the Office of Personnel Management until after this suit was brought.   But that fact is of no consequence.   Congress authorized the issuance of regulations so that problems arising in the administration of the statute could be addressed.   Litigation often brings to light latent ambiguities or unanswered questions that might not otherwise

consistent" with the statute or "arbitrary," since the terms "legal process" and "court of competent jurisdiction" are at least ambiguous,[22] and they further congressional intent to facilitate speedy enforcement of garnishment orders and to minimize the burden on the Government.

### V

The plain language of the statute, its legislative history and underlying purposes, as well as the explicit regulations authorized by the statute itself, all indicate that the Government cannot be held liable for honoring a writ of garnishment which is "regular on its face" and has been issued by a court with subject-matter jurisdiction to issue such orders.   Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

---

be apparent.   Thus, assuming the promulgation of § 581.305(f) was a response to this suit, that demonstrates only that the suit brought to light an additional administrative problem of the type that Congress thought should be addressed by regulation.   When OPM responded to this problem by issuing regulations it was doing no more than the task which Congress had assigned it.   See generally *Anderson, Clayton & Co.* v. *United States,* 562 F. 2d 972, 979–985 (CA5 1977), cert. denied, 436 U. S. 944 (1978).

[22] See *supra,* at 828.