64 Cal.Rptr.3d 55 (2007)
153 Cal.App.4th 1328
CATALYST STRATEGIC DESIGN, INC., Plaintiff and Appellant,
v.
KAISER FOUNDATION HEALTH PLAN, INC., et al., Defendants and Respondents.
No. B187254.
Court of Appeal of California, Second District, Division Eight.
August 2, 2007.
*56 Magaña, Cathcart & McCarthy, Peter T. Cathcart and Anne M. Huarte, Los Angeles; Law Offices of Armando J. Paz and Armando J. Paz; Richardson & Patel and Luan K. Phan, for Plaintiff and Appellant.
Kennedy P. Richardson and Yvonne M. Pierrou, Oakland, for Defendants and Respondents.
RUBIN, Acting P.J.
Catalyst Strategic Design, Inc. appeals from the court's dismissal by summary judgment of its class action lawsuit against Kaiser Foundation Health Plan, Inc. and Kaiser Permanente Insurance Company ("Kaiser") alleging they violated the Telephone Consumer Protection Act of 1991 by faxing an unsolicited advertisement to Catalyst. We affirm.

FACTS AND PROCEDURAL HISTORY
In August 2001, appellant Catalyst Strategic Design, Inc. called Kaiser to discuss providing health insurance to Catalyst's employees. During the phone call, appellant gave Kaiser its fax number for Kaiser to* send written information about Kaiser's health plans. Catalyst elected, however, not to sign up for coverage at that time.
Over the next year and a half, Kaiser contacted Catalyst about a dozen times by phone and in writing, including faxes, to discuss Kaiser's on-going individual coverage of Catalyst's president and in the hope of selling coverage to the company's employees. In January 2003, Catalyst told Kaiser it did not plan to buy coverage for company employees beyond the president's policy. Catalyst did not, however, tell Kaiser to no longer contact it or to stop sending faxes.
In May 2004, Kaiser faxed to Catalyst without its permission-a one-page advertisement for health plans available through Kaiser. Generally speaking, faxing unsolicited advertisements violates the Telephone Consumer Protection Act of 1991(Act). (47 U.S.C. § 227(b).) In response to the fax, Catalyst filed a class action complaint for itself and all others *57 similarly situated against Kaiser.[1] It alleged a cause of action for violating the Act, and further alleged that in breaching that statute, Kaiser also broke California's unfair competition law. (Bus. & Prof. Code, § 17200.)
Kaiser moved for summary judgment. It argued federal regulations deemed it to have had Catalyst's consent to send the faxed advertisement because Kaiser and Catalyst had an "established business relationship" arising from their discussions about insurance coverage. The court agreed, and dismissed Catalyst's complaint. This appeal followed.

DISCUSSION
In 1991, Congress passed the Act (47 U.S.C. § 227).[2] Broadly speaking, the Act prohibits four acts, one of which is sending unsolicited advertisements to another's fax machine: "It shall be unlawful for any person within the United States ... to send to a telephone facsimile machine an unsolicited advertisement." (§ 227(b)(1)(C).)[3] Three other acts it prohibits are using an automatic dialing system to call certain places (§ 227(b)(1)(A)); calling residences with an artificial or prerecorded voice except under certain circumstances (§ 227(b)(1)(B)); and, tying up multiple phone lines of a business with an automatic dialing system (§ 227(b)(1)(D)). The Act defines an "unsolicited advertisement" as "any material advertising the commercial availability ... of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." (§ 227(a)(5).)
Congress assigned the Federal Communications Commission the task of writing regulations to implement the Act. (§ 227(b)(2).) When the FCC was drafting its regulations, a national fax company asked the commission to create a "do not call" list instead of entirely banning unsolicited faxes. In response, the FCC concluded the act gave it no discretion to create exceptions to the prohibition of faxing unsolicited advertisements. (In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2003) 18 F.C.C.R. 16972 [2003 WL 21961003].) But, in fleshing out the meaning of faxing an advertisement with the recipient's permission, the commission decided to apply to faxes the Act's exception for established business relationships involving telephone solicitations. The commission explained:
"[Two fax companies] urged the Commission not to impose a ban on unsolicited telephone facsimile advertisements; [one of those companies] suggested that a telephone facsimile do-not-call list be created in lieu of a complete prohibition on such unsolicited advertisements. . . . [¶] In banning telephone facsimile advertisements, the [Act] leaves the Commission without discretion to create exemptions from or limit the effects of the prohibition (see § 227(b)(1)(C)); thus, such transmissions are banned in our rules as they are in the [Act]. § 64.1200(a)(3). We note, however, that *58 facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient."
Commission regulations defined an "existing business relationship" as:
"a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." (Kaufman v. ACS Systems, Inc. (2003) 110 Cal.App.4th 886, 909-910, 2 Cal.Rptr.3d 296.)
In due course, commission rulings and public practices revealed that the established business relationship exception for unsolicited faxes applied whether the fax's destination was a business or residence. (See, e.g., In re Tri-Star Marketing, Inc. (2000) 15 F.C.C.R. 11295 [2000 WL 796906]; In re Rules and Regulations Implementing Telephone Consumer Protection Act of 19.91, supra, 18 F.C.C.R. 16972.) Those precedents are important here because courts must defer to an administrative agency's interpretation of its regulations unless it patently contradicts Congressional intent. (FDA v. Brown & Williamson Tobacco Corp. (2000) 529 U.S. 120, 157-58, 120 S.Ct. 1291, 146 L.Ed.2d 121; Chevron U.S.A. v. Natural Res. Def. Council (1984) 467 U.S. 837, 843-14, 104 S.Ct. 2778, 81 L.Ed.2d 694.) The commission applied the established business relationship rule to faxes virtually from the Act's inception in the early 1990's. From then until Kaiser sent its one-page fax to Catalyst, Congress amended the Act several times, but never stated the commission had misconstrued Congressional intent involving faxes. (A little over a year after Kaiser sent its fax, Congress did amend that part of the Act dealing with unsolicited faxes, an amendment we discuss below.) We therefore hold the trial court correctly concluded that the established business relationship rule applied to Kaiser's fax to Catalyst, entitling Kaiser to summary judgment.
Catalyst notes that when Kaiser sent its fax the regulations explicitly defined "established business relationship" only once, and that definition covered telephone solicitation and mentioned only residential telephone subscribers, not business subscribers such as Catalyst. (47 C.F.R § 64.1200(f)(3) (2004).) Thus, Catalyst concludes, no established business relationship exception exists for unsolicited faxes. Catalyst's assertion is not compelling, however, because Congress's statutory language prohibiting certain types of telephone solicitation applied only to residential phones. (§ 227(b)(1)(B).) It follows that an exception to that prohibition is coterminus with the prohibition's scope. Thus, the established business relationship exception for telephone solicitation applies only to residential subscribers because the prohibition against solicitation itself protects only residential subscribers. By similar reasoning, because the prohibition of unsolicited faxes covers both residences and businesses, the established business relationship exception applies to both of them, too. (§ 227(b)(1)(C).)
Coming at the established business relationship exception from a different direction, Catalyst contends that if the only provision of the Act to explicitly contain an exception for established business relationships mentions only telephone solicitation, then no such exception exists for faxes. Without an exception, the Act's blanket prohibition of unsolicited faxes applies. *59 Thus, Catalyst asserts, the commission exceeded its authority by creating beyond the Act's statutory language an established business relationship exception for faxes. (Chevron U.S.A. v. Natural Res. Def. Council, supra, 467 U.S. at pp. 843-844, 104 S.Ct. 2778; United States v. Morton (1984) 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 [administrative agency must apply statute's plain language].)
To underscore its contention that the commission exceeded its authority, Catalyst points to the Junk Fax Prevention Act of 2005 (Pub.L. No. 109-21, (July 9, 2005) 119 Stat. 359, 2005 U.S.Code Cong. & Admin News), which was the first explicit statutory application of the established business relationship exception to unsolicited faxes sent to businesses. In that act, Congress amended the Act to state:[4]
"`The term "established business relationship," for purposes only of subsection (b)(1)(C)(i) [covering unsolicited faxes], shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003 [involving the established business relationship for telephone solicitations], except that[¶] "(A) such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber...."'
Thus, reasons Catalyst, the established business relationship exception applied to business subscribers only after Congress enacted the Junk Fax Prevention Act.
If we were reading the amendment in a vacuum, Catalyst's contention might very well be persuasive. But we do not interpret statutes in a vacuum or against a blank slate. For more than a decade before Congress passed the Junk Fax Prevention Act, the commission had applied the established business relationship for unsolicited faxes to business recipients. Congress can, with after-the-fact legislation, ratify an agency's previous statutory interpretation. (FDA v. Brown & Williamson Tobacco Corp., supra, 529 U.S. at p. 156, 120 S.Ct. 1291.) In 2003, the commission proposed eliminating its longstanding established business relationship exception for unsolicited faxes, stating in the Federal Register in July 2003:
"We now reverse our prior conclusion that an established business relationship provides companies with the necessary express permission to send faxes to their customers. As of the effective date of these rules, the EBR will no longer be sufficient to show that an individual or business has given their express permission to receive unsolicited facsimile advertisements." (68 Fed.Reg. 44168 (July 25, 2003).)
Facing resistance from public and congressional quarters, the commission delayed eliminating the exception for two and a half years, during which time Congress held hearings on the public's opposition to the exception's elimination. In opening one hearing, the Senate sponsor of the legislation stated:
"In July of 2003, the FCC reconsidered its Telephone Consumer Protection Act [Act] rules and elected to eliminate the ability for businesses to contact their *60 customers even where there exists an established business relationship. The effect of the FCC's rule would be to prevent a business from sending a fax solicitation to any person, whether it is a supplier or customer, without first obtaining prior written consent. This approach, while seemingly sensible, would impose significant costs on businesses in the form of extensive record keeping. Recognizing the problems created by this rule, the Commission has twice delayed the effective date, with the current extension of stay expiring on June 30, 2005.[¶] The purpose of this legislation is to preserve the established business relationship exception currently recognized under the [Act]." (Testimony before Sen. Com. on Commerce, Science, and Transportation, Subcom. on Consumer Affairs, Foreign Commerce and Tourism on Sen. No. 714, 109th Cong., 1st Sess., Opening Statement of Sen. Smith (April 13, 2005) [2005 WL 853590].)
Witness testimony echoed the senator's remarks.
"The Federal Communications Commission delivered quite a jolt to our industry with its Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991. That order, adopted June 26, 2003, and released July 3, 2003, turned our world upside down by reversing the Commission's longstanding recognition that faxes from our newspapers to our established business customers are not, in fact, unsolicited faxes in the meaning of the [Act]." (Testimony before Sen. Com. on Commerce, Science, and Transportation, etc., supra, Testimony of Jon E. Bladine, on Behalf of the Newspaper Association [2005 WL 853593].)
Another witness emphasized the longstanding practice and settled public understanding:
"We do, however, question the need for the changes that the FCC has made to the rules governing the fax provisions of the law. The prior rules, with an established business relationship (EBR) exception for faxes sent by firms to established clients and allowances for alternative forms of permission, have worked well over the past twelve years since implementation. The prior ruling created settled expectations among consumers and businesses alike." (Testimony before Sen. Com. on Commerce, Science, and Transportation, etc., supra, Statement of the National Association of Realtors [2005 WL 853591].)
By expressly forbidding the commission from ending what it had been allowing for more than a decade, the Junk Fax Prevention Act confirmed that the commission had correctly interpreted Congressional intent during those years. Thus, the Junk Fax Prevention Act's language covering an established business relationship exception for business recipients of faxes made express that which had always been assumed, but did not add anything new. The fax in question here, from business to business in the context of an established business relationship, was not, therefore, prohibited by the Act.

DISPOSITION
The judgment is affirmed. Respondents to recover their costs on appeal.
WE CONCUR: BOLAND and FLIER, JJ.
NOTES
[1] In addition to suing respondents Kaiser Foundation Health Plan, Inc. and Kaiser Permanente Insurance Company, Catalyst also sued the various Kaiser affiliates but later dismissed those defendants, and they are not part of this appeal.
[2] Unless otherwise stated, statutory references are to title 47 of the United States Code.
[3] As originally enacted, the prohibition of unsolicited faxes made it unlawful "to use any telephone facsimile machine ... to send an unsolicited advertisement to a telephone facsimile machine." In 2005, Congress amended the statute to its current wording. (Pub.L. No. 109-21, (July 9, 2005) 119 Stat. 359, 2005 U.S.Code Cong. & Admin News, § 2(a).)
[4] In 2006, the FCC adopted a definition for "established business relationship" for faxes that mentioned residential and business subscribers '(47 C.F.R. § 64.1200(f)(5)) ["The term established business relationship for purposes of paragraph (a)(3) of this section on the sending of facsimile advertisements means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber...."]. (71 Fed.Reg. 25967-01 (May 3, 2006).)