In the

# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 06-2186 & 07-1433

HAL D. HICKS,

*Plaintiff-Appellant,*

*v.*

MIDWEST TRANSIT, INC., and
HARRIS INVESTOR SERVICES, LLC,
also known as CFSB*direct*,

*Defendants-Appellees.*

————————

Appeals from the United States District Court
for the Southern District of Illinois.
No. 03 C 4004—**J. Phil Gilbert**, and **G. Patrick Murphy**, *Judges.*

————————

ARGUED APRIL 8, 2008—DECIDED JUNE 17, 2008

————————

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* This opinion marks the third published decision of this court stemming from controversies that arose after Hal Hicks was sued in Illinois state court for allegedly defrauding his company, Midwest Transit, Inc. ("Midwest"), when he served as its president and director. *See Hicks v. Midwest Transit, Inc.,* 500 F.3d 647 (7th Cir. 2007); *Hicks v. Midwest Transit, Inc.,* 479 F.3d 468 (7th Cir. 2007). This time, the issue is whether Hicks may collect damages from Harris Investor Services,

LLC ("Harris") for its alleged negligence in freezing Hicks's online stock-trading account. Harris froze Hicks's account pursuant to an attachment order issued by an Illinois state court. After an Illinois appellate court invalidated the attachment order, Hicks filed this suit against Harris, alleging that Harris was negligent for following the court order. Harris filed a motion for summary judgment, which the district court granted. The district court also denied Hicks's subsequent motion for reconsideration. Because Harris was not negligent when it complied with the facially valid court order, and because the motion for reconsideration raised no new facts or issues, we affirm both decisions.

## I. HISTORY

Hicks was part-owner, president, and a director of Midwest, a closely-held corporation that provided mail-carrying trailers to the United States Postal Service. In 2000, Hicks's co-owners commenced a shareholders' derivative suit against Hicks in state court in Lawrence County, Illinois, alleging numerous violations of fiduciary duties by Hicks when he managed Midwest, including siphoning corporate funds into his own personal accounts for his personal use. In 2001, the Lawrence County Circuit Court appointed a receiver, Don Hoagland, who filed pleadings seeking a prejudgment attachment under Illinois law of over $10 million worth of Hicks's property. *See* 735 Ill. Comp. Stat. 5/4-101. Hoagland did not post a surety bond with the state court along with his attachment request, *see* 735 Ill. Comp. Stat. 5/4-107; instead, he filed a motion to attach Hicks's assets without posting a surety bond, claiming that his status as a court-appointed

receiver made him an officer of the State of Illinois and exempted him from the statute's bond requirement, *see id.*

In July 2001, the Lawrence County Circuit Court ruled that a court-appointed receiver is an officer of the State of Illinois, and granted Hoagland's motion to attach Hicks's assets without posting a surety bond. The circuit court then entered an order attaching Hicks's assets, which included an online stock-brokerage account that Hicks maintained with Harris's predecessors—Internet stock brokers DLJ*direct* and CFSB*direct*—and later with Harris.[1] The order, entered on July 26, 2001, provided on its face the case number and caption, the signature of the judge, and an attestation of the court clerk. The attachment order described the account to attach as follows:

> Online stock trading account with DLJ Direct, a subsidiary of Donaldson, Lufkin and Generette, c/o Credit Suisse First Boston, AT&T Corporate Center, 227 West Monroe Street, Chicago, IL 60606-5016, or DLJ Direct, a subsidiary of Donaldson, Lufkin and Generette, c/o

---

[1] Hicks initially opened an online trading account with DLJ*direct* over the Internet in 1998. In February 2001, DLJ*direct* became CFSB*direct*, which became Harris in February 2002. At the time of the July 2001 attachment order, Hicks's account was held by CFSB*direct*. The online brokerage account allowed Hicks to execute self-directed stock purchases and sales of securities, which were held in "street name"—meaning they were registered to a nominee or depositary for the ownership of customers rather than registered to individual customers themselves (*i.e.*, the securities are "held electronically in the account of the stock broker, similar to a bank account."). *See* Wikipedia, Street name securities, http://en.wikipedia.org/wiki/Street_name_securities (last visited June 12, 2008).

Credit Suisse First Boston, 200 West Madison Street, Chicago, IL 60606.

The next day, the attachment order was served by hand at the offices of Credit Suisse First Boston, at 227 West Monroe Street in Chicago. The order was then faxed to CFSB*direct*'s compliance offices in New York and New Jersey, where it was reviewed by a compliance manager. The compliance manager considered the order to be regular on its face, and CFSB*direct* took action as directed by the order—it suspended stock transactions in Hicks's account and preserved the stock positions held in the account at the time of the attachment order.

Ten days later, Hicks filed a motion with the Lawrence County Circuit Court to vacate its order of attachment because Hoagland had not posted bond, and when that motion was denied, Hicks appealed the circuit court's decision. Over a year later, in September 2002, the Illinois Court of Appeals for the Fifth District vacated the circuit court's attachment order. The Illinois Court of Appeals held that the circuit court had erred by deeming Hoagland, a court-appointed receiver, to be an officer of the State of Illinois, and found that Hoagland's failure to post a surety bond made the order void as a matter of law. The Illinois Court of Appeals remanded the case to the Lawrence County Circuit Court to require Hoagland to post a surety bond. At that point, Harris removed the hold on Hicks's online brokerage account.

Hicks first filed this diversity-jurisdiction lawsuit in the United States District Court for the Southern District of Illinois in January 2003, seeking to recover damages from Midwest and Hoagland for wrongfully attaching Hicks's assets, and from Harris for its alleged negligence

in complying with the invalid attachment order. After several years of litigation, only the negligence claim against Harris remained. In this count of the complaint, Hicks alleged that Harris had duties "to investigate the allegations set forth in the Attachment Orders, to challenge the improper process served upon it . . . and to otherwise take steps [to] safeguard and protect the Hicks' Account." The complaint claimed that Harris was negligent for breaching these duties.

The case proceeded before Judge J. Phil Gilbert, and in August 2005, Harris moved for summary judgment on the negligence claim. Hicks filed a response to the motion, which repeated many of the allegations in his complaint and also alleged that Credit Suisse First Boston—the entity that was served the attachment order—was a separate and distinct legal entity from CFSB*direct*—the entity that held Hicks's account.

In March 2006, Judge Gilbert issued an opinion, which held that as a matter of law, Harris's (and its predecessors') duty to Hicks was limited to reasonably determining whether the court-issued attachment order was facially valid before complying with its terms and freezing Hicks's brokerage account. Judge Gilbert noted that "the parties [had] not cited to any Illinois or Seventh Circuit cases that have discussed the duties of a garnishee under similar circumstances and Hicks does not dispute this formulation," and he explained that the Illinois statutes governing attachment procedures comported with limiting Harris's duty in this fashion. Judge Gilbert also concluded that "the bond requirement issue goes to the substantive merit of the attachment order and not to whether the order was regular on its face." Because the attachment order's invalidity stemmed from Hoagland's

failure to post a surety bond and not from any facial defect, Judge Gilbert held that Hicks had not raised a genuine issue of material fact on the "reasonableness of Harris's conclusion that the attachment order was facially valid as a result of the bond issue." As for Hicks's improper-service-of-process argument, Judge Gilbert noted that service upon Harris was proper as a matter of Illinois statutory law and under the Uniform Commercial Code as codified in Illinois. Judge Gilbert then granted Harris's motion for summary judgment without hearing argument on the matter. Hicks timely filed a notice of appeal from this ruling in April 2006.

In August 2006, Hicks filed a motion for reconsideration with the district court, pursuant to Federal Rule of Civil Procedure 60(b). This motion was based upon "critical documents" that were not part of the summary-judgment record. Hicks alleged that these documents proved that service of the attachment order was improper: Hicks claimed that Harris had misrepresented the corporate structure of Credit Suisse First Boston because the later-produced documents proved that CFSB*direct* was a separate entity from Credit Suisse First Boston, which, Hicks argued, meant that the attachment order was never properly served on CFSB*direct*. In September 2006, Judge Gilbert recused himself, and the case was reassigned to then Chief Judge, G. Patrick Murphy. After reviewing the entire record, Judge Murphy concluded in February 2007 that "nothing justifies relief from the judgment" because "the late discovery responses only verify and corroborate facts that were already before the Court." Judge Murphy then denied Hicks's motion for reconsideration. Hicks filed a notice of appeal from that ruling as well, and we consolidated the appeals.

## II. ANALYSIS

On appeal, Hicks reiterates the argument raised in his complaint that the attachment order was invalid because Hoagland failed to post a surety bond, and that consequently, Harris was negligent for complying with the invalid order. Hicks claims that the district court erred when it granted summary judgment to Harris because CFSB*direct* was never personally served with the Lawrence County Circuit Court's attachment order. Hicks also maintains that the attachment order was "illegal and void" because "[the order] improperly attempted to attach and/or levy monies that were outside of Lawrence County, Illinois." Lastly, Hicks contends that the district court should have granted his motion to reconsider because the summary-judgment order was predicated on "false, incorrect, and/or misleading" facts submitted by Harris.

*A. The district court's grant of summary judgment to Harris*

We review the district court's grant of summary judgment *de novo*, viewing all facts in the light most favorable to Hicks. *See Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 635 (7th Cir. 2007). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). " 'We may affirm summary judgment on any basis we find in the record.' " *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (quoting *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007)).

Hicks has never challenged the district court's formulation of Harris's duty under Illinois law—that Harris had no duty to look beyond the face of the attachment order to ascertain its validity. Hicks has therefore waived any argument on that point. *See Garg*, 521 F.3d at 736. And Hicks's waiver is the death knell to his appeal because all of Hicks's arguments allege deficiencies in the attachment order that would not be evident from its face.

"[T]he phrase 'regular on its face,' means nothing more than what it says: legal process whose validity, facially judged, appears to evidence a legitimate exercise of jurisdiction on the part of the issuing authority." *Millard v. United States*, 16 Cl. Ct. 485, 489 (1989). Certain deficiencies, such as lack of personal jurisdiction, require a tribunal to engage in a fact-bound analysis of the defendant's contacts with the forum and its governing law, and cannot be determined solely from the face of a document. *Cf. United States v. Morton*, 467 U.S. 822, 829-30 (1984) (holding that federal statute required United States to honor wage garnishment orders irrespective of their deficiency for lack of personal jurisdiction on grounds that personal jurisdiction cannot be determined from face of order). But other procedural defects may be obvious from a quick review of the document itself. *Cf. id.* at 829 n.10 (" 'The inquiry into whether an order is valid on its face is an examination of the procedural aspects of the legal process involved, not the substantive issues. Whether a process conforms or is regular 'on its face' means just that. Facial validity of a writ need not be determined 'upon the basis of scrutiny by a trained legal mind,' nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know.' " (quoting *In re Mathews*, 61 Comp. Gen. 229, 230-31 (1982))).

Certainly Harris could not have had notice of the attachment order's invalidity based on Hoagland's failure to post a surety bond from the face of the order. Illinois law allows an attachment order to be entered without bond if requested by a state officer. *See* 735 Ill. Comp. Stat. 5/4-107 ("Nothing herein contained shall be construed to require the State of Illinois, or any Department of Government thereof, or any State officer, to file a bond . . . ."). The Lawrence County Circuit Court stated in the order that it had granted Hoagland's motion to waive bond, and that decision did not lose its effect until it was vacated by the Illinois Court of Appeals after a thorough, substantive analysis of the issue. Thus, the fact that Hoagland never posted a surety bond—the basis for liability pled in the complaint—could not be discerned from a review of the face of the attachment order, and does not raise a genuine issue of material fact.

Similarly, Hicks's argument that CFSB*direct* was never personally served with the attachment order is not evident from the face of the order. The order delineates that the property attached will be served care of ("c/o") Credit Suisse First Boston, and lists the 227 West Monroe Street address. The order was hand-delivered to that address, and faxed to CFSB*direct*'s officer in New Jersey. CFSB*direct*'s compliance manager did not have to engage in the scrutiny of notice or service of process that a "trained legal mind" might undergo before deciding whether to comply with the order. *See Morton*, 467 U.S. at 829 n.10. And it is not clear (even to a trained legal mind) that service of process on a company in the same corporate family as an intermediary holding securities in "street name" is insufficient under Illinois law to confer jurisdiction over the account. *See* 810 Ill. Comp. Stat. 5/8-112(c)

(allowing service "upon the securities intermediary with whom the debtor's securities account is maintained" to reach "the interest of a debtor in a security entitlement"). Service of process is the means by which a court acquires personal jurisdiction, *see Coyne v. OSF Healthcare Sys.*, 773 N.E.2d 732, 734 (Ill. App. Ct. 2002); *Whitley v. Lutheran Hosp.*, 392 N.E.2d 729, 732 (Ill. App. Ct. 1979), and questions of personal jurisdiction cannot ordinarily be determined solely by examining the face of an order, *cf. Morton*, 467 U.S. at 829-30.

Hicks's claim that the attachment order was invalid because it attached assets outside of Lawrence County, the situs of the circuit court, also fails to raise a problem that would have been evident from the face of the attachment order. We recognize that it is clear from the order's face that a Lawrence County court is attaching assets located in Cook County, but it is entirely unclear that this action would be inappropriate under Illinois law—in fact, it appears perfectly acceptable. *See* 735 Ill. Comp. Stat. 5/4-118 (allowing for certified copies of attachment orders to be issued and levied in any other county where debtor may have property liable to be attached).

The attachment order listed the names of the parties, the court, the case and caption number, and it bore the signature of the issuing judge and the clerk's attestation. The order contained all the trappings of valid legal process. It would create perverse incentives to force a garnishee to look beyond these facets and conduct an independent legal inquiry before deciding whether to comply with such an order. Indeed, allowing a negligence action to be maintained against a garnishee who complies with a facially legitimate order would place the garnishee be-

tween the Scylla of complying with the order and being liable for negligence if the order is reversed on appeal, and the Charybdis of violating the order and being held in contempt or otherwise sanctioned. And sanctions for violating a garnishment order seem all the more likely because Illinois has supplemented the intrinsic coercive force of attachment orders with a statute that mandates that garnishees comply with attachment orders. *See* 735 Ill. Comp. Stat. 5/4-126.

Given the complex nature of the legal issues surrounding appropriate service of process and personal jurisdiction, we do not believe it would be reasonable to force the recipient of an attachment order—which bears all indicia of legitimacy—to engage in an independent investigation for potential underlying legal deficiencies. Illinois would not require a garnishee to scour the statute books, acquaint himself with the case law, and come to a legal conclusion about the propriety of the issuing court's authority. But in order to resolve the issues that Hicks raises, that is precisely the level of inquiry that would be required. As Judge Gilbert aptly noted, "The scope of the inquiry the Court has undertaken reinforces its hesitancy. To determine the validity of the Attachment Order on the level that Hicks asserts would force a garnishee in Harris's position to conduct a review similar to that this Court has undertaken here."

The party in the best position to promptly raise the legal infirmities underlying the order was Hicks, and he did so immediately—within ten days after the order was issued, he challenged the order in the Illinois circuit court. In fact, in his state-court challenge, Hicks pressed the very concerns with the attachment order that he faults Harris for failing to notice; and given that Hicks could

easily protect his own rights, we do not believe that
Illinois law would impose a duty upon Harris to do so as
well. Hicks's complaint therefore failed to raised any
potential problems with the attachment order that
would have been evident from its face, and Judge Gilbert
properly decided that Hicks failed to raise a genuine
issue of material fact with respect to his negligence claim.

B.    *The district court's denial of Hicks's motion for reconsidera-*
      *tion*

We review the district court's decision to deny Hicks's
motion for reconsideration under Federal Rule of Civil
Procedure 60(b) for an abuse of discretion. *See Spurgin-
Dienst v. United States*, 359 F.3d 451, 456-57 (7th Cir. 2004);
*Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000).
Under Rule 60(b), a court may relieve a party from a final
judgment or order based on, among other reasons, "mis-
take, inadvertence, surprise, or excusable neglect"; "newly
discovered evidence that, with reasonable diligence,
could not have been discovered in time to move for a
new trial"; or "fraud (whether previously called intrinsic
or extrinsic), misrepresentation, or misconduct by an
opposing party." Fed. R. Civ. P. 60(b). " 'Motions for
reconsideration serve a limited function; to correct manifest
errors of law or fact or to present newly discovered evi-
dence.' " *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246,
251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*,
561 F. Supp. 656, 665-66 (N.D. Ill. 1976)).

In his Rule 60(b) motion, Hicks asserted that the district
court entered summary judgment against him before he
was allowed to supplement the record with additional
documents allegedly proving that Credit Suisse First

Boston and CFSB*direct* were separate corporate entities, and Hicks also accused Harris of misrepresenting facts to the court. Judge Murphy reviewed the record and found that the newly submitted documents merely verified and corroborated facts already before the court. After conducting our own review of the record, we certainly agree with Judge Murphy. Nothing Hicks added to the record established any new facts about the corporate relationship between CFSB*direct* and Credit Suisse First Boston, which Harris always admitted were separate, but related entities. And even had Hicks proved that CFSB*direct* and Credit Suisse First Boston were separate entities, it would not change the end-result: the district court still would have granted summary judgment because the relationship between CFSB*direct* and Credit Suisse First Boston goes to the issue of the propriety of service, which we have explained is not a facial challenge to the attachment order. Judge Murphy did not abuse his discretion when he denied Hicks's Rule 60(b) motion to reconsider.

### III. CONCLUSION

We AFFIRM the district court's grant of summary judgment to Harris, and we also AFFIRM the district court's denial of Hicks's motion to reconsider.