**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMPTON UNIFIED SCHOOL DISTRICT,
  *Plaintiff-Appellant,*

  v.

STARVENIA ADDISON; GLORIA
ALLEN,
  *Defendants-Appellees.*

No. 07-55751

D.C. No.
CV-06-04717-AHM

COMPTON UNIFIED SCHOOL DISTRICT,
  *Plaintiff-Appellant,*

  v.

STARVENIA ADDISON; GLORIA
ALLEN,
  *Defendants-Appellees.*

No. 07-56013

D.C. No.
CV-06-04717-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
October 23, 2008—Pasadena, California

Filed March 22, 2010

Before: Harry Pregerson and N. Randy Smith,
Circuit Judges, and Raner C. Collins,* District Judge.

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

Opinion by Judge Pregerson;
Dissent by Judge N.R. Smith

**COUNSEL**

Barrett K. Green and Daniel J. Cravens, Littler Mendelson, Los Angeles, California, for the appellant.

George D. Crook, Newman Aaronson Vanaman, Sherman Oaks, California, for the appellee.

## OPINION

PREGERSON, Circuit Judge:

Compton Unified School District (the "School District") appeals the district court's decision granting judgment on the pleadings in favor of Starvenia Addison ("Addison"), a student in the School District. The School District argues that Addison does not have a cognizable claim against the School District for its failure to identify her disabilities. We have jurisdiction under 28 U.S.C. § 1291. We review matters of law, such as the jurisdictional issue raised here, de novo, *see Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1179 (9th Cir. 2002), and affirm.

## I.   Background

Addison received very poor grades and scored below the first percentile on standardized tests during her ninth-grade year in 2002-2003. The school counselor attributed Addison's poor performance to common "transitional year" difficulties. The counselor did not consider it atypical for a ninth-grader such as Addison to perform at a fourth-grade level.

In the fall of her tenth-grade year, Addison failed every academic subject. The counselor considered these grades to be a "major red flag." Teachers reported that Addison was "like a stick of furniture" in class, and that her work was "gibberish and incomprehensible." Teachers also reported that Addison sometimes refused to enter the classroom, colored with crayons at her desk, played with dolls in class, and urinated on herself in class.

Addison's mother was reluctant to have the child "looked at," and School District officials decided not to "push." Instead, the School District referred Addison to a third-party mental-health counselor. The third-party counselor recommended that the School District assess Addison for learning disabilities. Despite the recommendation, the School District did not refer Addison for an educational assessment, and instead promoted Addison to eleventh grade.

In September 2004, Addison's mother wrote a letter to the School District explicitly requesting an educational assessment and Individualized Education Program ("IEP") meeting. The assessment took place on December 8, 2004. The IEP team determined that Addison was eligible for special education services on January 26, 2005.

Addison brought an administrative claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, seeking compensatory educational services for the School District's failure to identify her needs and provide a free appropriate public education. The administrative law judge found for Addison, and the district court affirmed. This appeal timely followed.

## II.   Analysis

### A.   IDEA Claims

**[1]** The IDEA seeks to ensure that children with disabilities have access to a free appropriate public education. 20 U.S.C. § 1400. The IDEA "provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993). One of these conditions is that states enact policies and procedures ensuring that "all children with disabilities . . . who are in need of special education services[ ] are identified, located, and evaluated." 20 U.S.C.

§ 1412(a)(3)(A). This obligation is also known as the "child find" requirement.

**[2]** The IDEA also requires states to implement a number of procedural safeguards to ensure that disabled children receive an appropriate education. Among these safeguards is the opportunity for any party to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(6)(A). 34 C.F.R. § 300.507 implements this due process complaint requirement.

**[3]** As another, separate procedural safeguard, the IDEA requires that local educational agencies provide written notice to a child's parents whenever the agency "proposes to initiate or change" or "refuses to initiate or change the identification, evaluation, or educational placement of the child . . . ." 20 U.S.C. § 1415(b)(3). 34 C.F.R. § 300.503(a) implements these notice requirements.

**[4]** California, in compliance with the IDEA, mandates that local educational agencies "shall actively and systematically seek out all individuals with exceptional needs." Cal. Educ. Code § 56300. "All children with disabilities . . . shall be identified, located, and assessed." Cal. Educ. Code § 56301(a). California also allows parents to initiate a due process hearing when there is a proposal or a refusal to initiate or change "the identification, assessment, or educational placement" of a child. Cal. Educ. Code § 56501(a).

The School District first argues that the IDEA's written notice procedures limit the jurisdictional scope of the due process complaint procedure. The notice provisions set forth in 20 U.S.C. § 1415(b)(3) and 34 C.F.R. § 300.503(a) apply to proposals or refusals to initiate a change regarding a student's identification, assessment, or placement. The School District asserts that, because it chose to ignore Addison's disabilities and take no action, it has not affirmatively *refused* to act. The

School District therefore contends that the notice requirement does not apply. The School District further asserts that there can be no due process right to file a claim unless the notice provisions specifically apply to such a claim. We reject this argument.

[5] We read statutes as a whole, and avoid statutory interpretations which would produce absurd results. *See United States v. Morton*, 467 U.S. 822, 828 (1984); *Arizona State Bd. for Charter Schools v. United States Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006). As the Supreme Court recently stated in the context of an unrelated provision of the IDEA, a "reading of the [Individuals with Disabilities Education] Act that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services." *Forest Grove School Dist. v. T.A.*, 129 S.Ct. 2484, 2495 (2009). The jurisdictional requirements for an IDEA complaint are clearly set out in 20 U.S.C. § 1415(b)(6)(A), apart from the notice provisions of 20 U.S.C. § 1415(b)(3). Section 1415(b)(6)(A) states that a party may present a complaint "with respect to *any matter* relating to the identification, evaluation, or educational placement of the child." (emphasis added). The notice requirements of 20 U.S.C. § 1415(b)(3) do not cabin this broad jurisdictional mandate.[1] Addison's claim is cognizable under the IDEA.[2]

---

[1]The School District also argues that notice requirements in 20 U.S.C. § 1415(b)(7)(A) strictly limit the scope of 20 U.S.C. § 1415(b)(6). Strict adherence to the language of Section (b)(7)(A), however, would conflict not only with 20 U.S.C. § 1415(b)(6) (granting jurisdiction over "any matter"), but also with 20 U.S.C. § 1415(b)(3) (establishing notice requirements where an agency proposes or refuses to act). Section (b)(7)(A)(ii)(III) requires "a description of the nature of the problem of the child relating to such proposed initiation or change." Nowhere does Section (b)(7)(A) refer to a *refusal* to act, despite the explicit inclusion of such language in Section (b)(3). "It is a well-established principle of statutory construction that legislative enactments should not be construed to render

**[6]** The School District also contends, based on *Arlington Century School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291 (2006), that it did not have "clear notice" of the availability of an administrative hearing in "child find" cases. This argument has no merit, as the IDEA clearly allows complaints "with respect to *any matter relating to the identification*, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(6)(A) (emphasis added).

## B. Attorneys' Fees

**[7]** We lastly address, and reject, the School District's argument that the district court's award of attorneys' fees should be vacated. The district court may, in its discretion, award attorneys' fees to the prevailing party. *Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1115 (9th Cir. 2006). In *Aguirre*, we held that the "degree of success obtained" is the most critical factor in determining whether fees are warranted in an IDEA case. *Id.* at 1118. Citing *Henley v. Eckerhart*, 461 U.S. 424 (1983), we also stated that

---

their provisions mere surplusage." *American Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (internal quotation omitted). We therefore do not accept the School District's suggestion that we should read Section (b)(7)(A) to strictly control the scope of IDEA's notice and jurisdictional provisions.

**2**Even if the School District were correct in its contention that IDEA claims may only be brought over proposals or affirmative refusals to initiate a change, Addison's claim would still be cognizable. The School District does not contest that a due process hearing is available when an education agency "refuses to initiate or change[ ] the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to the child." 20 U.S.C. § 1415 (b)(3)(B). Instead, the School District seeks to cast its deliberate indifference as something other than a "refusal." We do not agree with the School District's characterization. To refuse is "to show or express an unwillingness to do . . . ." *Webster's New Collegiate Dictionary* 972 (1973 ed.). The School District's wilful inaction in the face of numerous "red flags" is more than sufficient to demonstrate its unwillingness and refusal to evaluate Addison.

there is "no precise rule or formula for making these determinations," and that a district court may award "full fees even where a party did not prevail on every contention." *Id.* at 1121 (citations omitted). Here, though the district court did not use the term "degree of success," it did cite *Aguirre* as the applicable standard. Considering Addison's substantial degree of success in administrative and district court proceedings, the district court did not abuse its discretion in awarding attorneys' fees.

## III.  Conclusion

We conclude that claims based on a local educational agency's failure to meet the "child find" requirement are cognizable under the IDEA, and that here, the School District had clear notice of this fact. Accordingly, the district court's orders granting judgment on the pleadings and awarding attorneys' fees are **AFFIRMED**.

---

N.R. Smith, Circuit Judge, dissenting:

The majority finds and district judge found that Congress clearly intended to create a cause of action when it drafted 20 U.S.C. § 1415 of the IDEA. I cannot agree. The clear language of the statute makes them wrong. Further, even if their position could be harmonized with the statute, one cannot find that Addison is entitled to relief on this record.

This case comes before our panel as an appeal from a judgment on the pleadings against Plaintiff, CUSD. We review *de novo* a Rule 12(c) judgment on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A judgment on the pleadings is proper if, taking all of CUSD's allegations in its pleadings as true, Addison is entitled to judgment as a matter of law. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

On appeal to the district court, CUSD only challenged whether the ALJ had authority to conduct a due process hearing, in which the ALJ could determine whether CUSD violated the IDEA's child-find provision. CUSD argued that, under the IDEA and state law, a due process hearing may be held only where the school district purposefully acts or refuses to act, not when the complained-of conduct is best described as negligence.

"In the absence of clear evidence of congressional intent, we may not usurp the legislative power by unilaterally creating a cause of action." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230-31 (9th Cir. 2008) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) ("The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.")). Thus, the burden of establishing a private cause of action falls upon the plaintiff; a burden Addison has not carried.

## I. THE EXISTENCE OF A PRIVATE CAUSE OF ACTION

In federal court, parents may only challenge a school district's failure to carry out its IDEA obligations based on the provisions of the IDEA. It is not a common law action, and an action cannot be brought against a school district pursuant to 42 U.S.C. § 1983. While the IDEA presents standards for educating children, a private right of action must exist in order for a court to grant relief for a statutory violation. Thus, it is not enough that Addison shows a statutory violation, she must also establish that the statute creates a private cause of action.

Looking first to the IDEA, Congress left the details of how the objectives of the IDEA are to be achieved to the states, by requiring those states who wish to obtain funding, "submit[ ] a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State

meets [the conditions of the IDEA]." 20 U.S.C. § 1412(a). In California, this plan is found in Part 30 of the California Education Code. As set out in the California Education Code, the state has, in turn, given local education areas the task of establishing written policies and procedures to govern implementation of the IDEA in its area. Cal. Educ. Code § 56301(d)(1). Therefore, to determine whether parents may bring an IDEA due process hearing, one must consider all three plans: federal, state, and local. Addison brought her claim for due process on the ground that CUSD violated the IDEA's Child-find provision. The district court found § 1415(b)(6) and its accompanying regulation, 34 C.F.R. § 300.507, establish a private cause of action for violations of the Child-find provision.

The plain language of § 1415 requires that states establish and maintain procedures allowing parties to present a complaint as to matters regarding identification of children.[1] The Child-find provision, 20 U.S.C. § 1412(a)(3)(A), requires that the state has "in effect policies and procedures to ensure that the State meets . . . the following condition[ ]:"

> All children with disabilities residing in the State, . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

The state must present these policies and procedures to the

---

[1] When a statute only requires that the state or school district have a procedure in place, governing a certain course of action, I refer to it as creating a "procedural requirement." However, when the statute actually governs the very course of action, I refer to it as creating a "substantive standard" or "substantive requirement."

satisfaction of the Secretary. *Id.* at § 1412(a). Section 1412 thus requires that the state have *policies and procedures* in place, to the satisfaction of the Secretary.

In § 1415, Congress requires that the education agency "shall establish ***and maintain*** procedures in accordance with *this section* to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." *Id.* at § 1415(a) (emphases added). Looking at the plain language of § 1415, a school district "maintains" a procedure when it follows and enforces that procedure. The list of procedures that must be maintained includes a procedure providing "[a]n opportunity . . . to present [ ] complaint[s] with respect to any matter relating to the identification, evaluation, or educational placement of the child . . . ." *Id.* at § 1415(b)(6)(A). By requiring that the *states* develop and maintain procedures governing initiating a due process hearing, Congress instructed the courts that we are to give deference to the states.

California allows parents to initiate due process hearing procedures (as prescribed by Chapter 5, Part 30, Division 4, Title 2, of the California Education Code) under circumstances where the school district has refused to initiate the identification, assessment, or education placement of a child. Cal. Educ. Code § 56501(a)(2). The majority holds that CUSD's inaction, in the face of these troubling facts, amounts to a "refusal" under the IDEA. The majority cites no authority for its interpretation of the term "refusal."

## A.   Defining "Refusal"

(1)   *Refusal Is Not Defined In The IDEA, The CFRs, or The California Education Code*

The IDEA does not define the term "refusal." However, it does discuss the consequences of a school district's refusal to

initiate identification, evaluation, or educational placement of a child of Addison's age (at the relevant time) in its section on procedural safeguards. Section 1415 requires that states establish and maintain a procedure requiring the governmental agency provide parents written prior notice whenever it "refuses to initiate or change, the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(3)(B). Such notice must include :

(1) "a description of the action . . . refused by the agency," § 1415(c)(1)(A);

(2) "an explanation of why the agency . . . refuses to take the action," § 1415(c)(1)(B);

(3) "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the . . . refused action," *Id.*;

(4) "a description of other options considered by the IEP Team and the reasons why those options were rejected," § 1415(c)(1)(E); and

(5) "a description of the factors that are relevant to the agency's . . . refusal," § 1415(c)(1)(F).

The regulations accompanying the IDEA also do little to help this court interpret "refusal." An agency must give written notice to the parent of a child with a disability "a reasonable time before the public agency" "[r]efuses to initiate or change the identification, evaluation, or educational placement of the child." 34 C.F.R. § 300.503(a)(2). The regulation mimics § 1415 as to the required contents of that notice, in that it requires that the notice include all five of the statements listed above. 34 C.F.R. §§ 300.503(b)(1), (b)(2), (b)(3), (b)(6), (b)(7).

The California Education Code repeats the requirements found in the IDEA and accompanying CFRs without adding

any more detailed definition for "refusal." Pursuant to § 1415(b)(3) and 34 C.F.R. § 300.503, California requires a public agency provide parents with prior written notice upon a child's initial assessment, and notice a reasonable time before its refusal to initiate or change identification, assessment, or educational placement of a child. Cal. Educ. Code § 56500.4(a). The agency must also "provide a description of any assessment procedures the agency proposes to conduct." *Id*. The contents of a notice requirement are identical to the content requirements found in the CFR. *See id*. at § 56500.4(b).

(2) *Statutory Interpretation*

The IDEA, the CFRs, and the California Education Code all presuppose that there has been purposeful action with regard to a specific student, before any "refusal" occurred. "When the statutory 'language is plain, the sole function of the courts—at least where disposition required by the text is not absurd—is to enforce it according to its terms.' " *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296-97 (2006) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Interpreting refusal to include a school district's negligent failure to identify students with disabilities in a timely manner—as the majority argues here—leads to an absurd result (even under the distressing facts before us) and leaves a host of questions in its wake.

The IDEA states implicitly, and the CFR and the California Education Code state explicitly, that written notice is to be given to a parent prior to the refusal. 20 U.S.C. § 1415(c), 34 C.F.R. § 300.503(a), and Cal. Educ. Code § 56500.4(a). Public agencies are required to give prior written notice to the parents of the student (a) describing the refused action, (b) explaining why the agency refused the action, and (c) setting out the factors considered by the agency in making its refusal. We cannot read the IDEA to require an agency give prior

written notice that it *will* be negligent: describing the decision concerning which it will be negligent, the reasons it has decided to be negligent, and the factors it considered in deciding to be negligent. It would make the prior written notice requirement absurd (unless CUSD's actions are described as something other than negligence; here, neither party claims that CUSD acted purposefully in its failure to evaluate Addison).

The term "refusal" obviously includes purposeful agency action in response to a conflict over (1) whether to evaluate a student, or (2) how to deal with an evaluated student. The plain language of the statute makes that a reasonable interpretation. Plenty of IDEA cases come before the courts as the result of a parent and the local education agency disagreeing over the proper classification of a child or the proper appropriate education. Such cases fit neatly into the statutory scheme. As discussed above, once an issue has come to a point of contention, the content requirements for the prior written notice (and the due process hearing complaint, for that matter) make sense.

However, applying the IDEA in cases where there is no point in dispute between a parent and the public agency not only renders the statutory language absurd, but also appears to go against the purpose of the IDEA. The core of the IDEA "is the cooperative process that it establishes between parents and schools." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The IDEA was enacted to provide better education for children with disabilities by "strengthening the role and responsibility of parents and ensuring that families of such children have meaningful opportunities to participate in the education of their children at school and at home." 20 U.S.C. § 1400(c)(5)(B). Rather than empowering parents and strengthening their role and responsibility in their children's education, this majority's interpretation of the school district's duties weakens parents' role by casting the responsibility to

monitor and identify children's development *solely* on to the shoulders of our school system.

Finally, not having a private cause of action does not mean that there is no public recourse for violations of the IDEA, the CFRs, or the California Education Code. As seen at every level of this legislation, funding is conditioned upon compliance. Cal. Educ. Code §§ 56045, 56125, 56845. Furthermore, such compliance is ensured not merely through the investigation of complaints—as discussed in § 56500.2—but also in monitoring. Cal. Educ. Code §§ 56125, 56135.

Finding that CUSD did not "refuse" under the statute means that the ALJ did not have authority to conduct a due process hearing, because Congress did not create a private right of action as a method of recourse for the school district's actions here.

## II. FINDING A CHILD-FIND VIOLATION

Even if Addison were to demonstrate that a private cause of action existed under the IDEA, the record before this panel is not sufficiently developed so that we should render judgment in this case. On a motion for judgment on the pleadings, the panel cannot properly determine whether CUSD violated its Child-find requirement, because the CUSD local plan is not in this record. This panel must review the CUSD local plan, because the IDEA and its accompanying CFRs are procedural—allowing the states to determine how best to achieve the Child-find requirement, so long as certain procedures are in place. At the state level, the California Education Code allows the school districts to develop local plans detailing how the districts will satisfy the Child-find requirement. In the absence of this local plan, the majority not only rules without a standard to apply, it ignores the statutory framework of the IDEA.

As mentioned above, § 1412 outlines the Child-find requirement for school districts. Unlike § 1415, § 1412 only

requires that states establish certain procedures to the satisfaction of the Secretary. Therefore, while a state can violate § 1415 if it fails to either establish a procedure or to maintain that procedure, a state can only violate § 1412 by not having a procedure at all. Given that Congress included that additional substantive requirement only three sections later, it appears that Congress did not intend to create such a requirement in § 1412. (Again, this does not leave the public without redress; failure to perform under the IDEA can and does lead to reduced funding. *See Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (explaining that funding is conditioned "on compliance with certain goals and procedures."). A state does not comply with the IDEA, in regard to the Child-find provision, if it does not provide procedures that satisfy the Secretary.)

Therefore, in order to show that there was some sort of substantive Child-find violation, Addison must identify that violation in the Code of Federal Regulations or state or local procedures that were adopted pursuant to this statute. The ALJ cited 34 C.F.R. § 300.125 (2006) (currently codified at 34 C.F.R. § 300.111) in her finding that Addison prevailed on the pleadings in her cause of action. However, 34 C.F.R. § 300.125 only requires that "[t]he State must have in effect policies and procedures to ensure that (i) All children with disabilities residing in the State . . . are identified, located, and evaluated." This mirrors the language of § 1412; it is a procedural requirement. Plaintiff never contended that California failed to have these procedures in place. The ALJ also cited California Education Code sections 56300 and 56301 as setting forth obligations that were violated by CUSD in this case. Again, because Addison did not allege any procedural violations, the panel must find that these statutory sections provide a substantive standard that has been violated.

At first glance, it would appear that the California Education Code may establish a substantive standard against which we might compare CUSD's actions. The California Education

Code does begin with an imperative: an "agency shall actively and systematically seek out all individuals with exceptional needs." Cal. Educ. Code § 56300. However, the following two sections of the Education Code continue on to detail the manner in which that imperative is to be achieved. It must be achieved *through the creation of local plans*. Cal. Educ. Code §§ 56301, 56302.

Sections 56301 and 56302 clarify that the local plans govern what the Child-find process will look like. "Each special education local plan area shall establish written policies and procedures . . . for a continuous child-find system . . . ." Cal. Educ. Code § 56301(d)(1). "Identification procedures shall include systematic methods of utilizing referrals of pupils from teachers, parents, agencies, appropriate professional persons, and from other members of the public." Cal. Educ. Code § 56302.

It seems apparent from sections 56301 and 56302 that the purpose of the imperative was to set the local *plans* as a standard against which a school district's actions are to be compared. Section 56205 supports such a reading by explaining the manner in which California assures compliance with IDEA requirements: "Each special education local plan area submitting a local plan to the Superintendent under this part shall ensure . . . that it has in effect policies, procedures, and programs that are consistent with state laws, regulations, and policies governing the following: . . . (3) Child-find and referral. . . . (11) Compliance assurances . . . . (12)(A) A description of the governance and administration of the plan . . . . (15) Participation in state and districtwide assessments, . . . and reports relating to assessments." Cal. Educ. Code § 56205(a).

Given this precedent, we cannot hold that there has been a violation of the Child-find requirement without, at very least, reviewing the CUSD local plan. Further, if reviewing the local plan is not a prerequisite, local plans serve no purpose.

The IDEA has been recognized as a model of "cooperative federalism," *see Schaffer*, 546 U.S. at 52, a system where Congress set out the goals and procedures, but allows states the freedom to decide how those goals and procedures were to be implemented on a day-to-day basis. By finding that the school district has violated the Child-find provision, without even reviewing the CUSD procedures, the majority ignores the statutory complex outlined here.

## III. CONCLUSION

I am sympathetic to Addison's plight in this case and disappointed that more was not done to aid her while she was as student in the school district. However, I cannot find a private cause of action within the IDEA statutory structure, and I cannot harmonize the language of the statute with a private cause of action for negligence. Further, even if I were to find such things, I do not believe that the record is sufficiently developed for a final judgment at this juncture. For these reasons, I must dissent.